855 So.2d 195 (2003)
ALACHUA COUNTY, Florida and the Labor Party Just Health Care Committee, through its Chairman Mark Piotrowski and the Alachua County Labor Party, through its Co-chairs, Jennifer Brown and Mark Piotrowski, and Beverly Hill, the Supervisor of Elections, for Alachua County, Florida, Appellants,
v.
Howard J. SCHARPS, Appellee.
No. 1D02-3240.
District Court of Appeal of Florida, First District.
September 12, 2003.
*196 David Wagner, County Attorney, Gainesville; Robert L. Nabors, of Nabors, Giblin & Nickerson, P.A., Tallahassee; Andrea Costello and Alice K. Nelson, of Southern Legal Counsel, Inc., Gainesville, for Appellants.
Joseph W. Little, Gainesville, for Appellee.
WOLF, C.J.
Appellant, Alachua County Board of County Commissioners (the County), was the defendant in an injunctive and declaratory action brought by appellee, Howard J. Scharps. The County challenges a final judgment invalidating a resolution passed by the County which directed that a referendum be placed on the general election ballot. Appellant raises a number of issues, including whether appellee had taxpayer standing to challenge the County's authorization of the referendum. We find that appellee lacks standing; therefore, we reverse the decision of the trial court on this basis and decline to address the other issues raised by the County.
On July 11, 2000, the County adopted Resolution 00-55 (the resolution), and directed that the following non-binding question be placed on the November 8, 2000, Alachua County general election ballot:

*197 UNIVERSAL HEALTH CARE AND HEALTH INSURANCE TRUST FUND

Do you favor legislation to create a system of universal health care in Florida that provides all residents with comprehensive health care coverage (including the freedom to choose doctors and other health care professionals, facilities and services) and eliminates the role of health insurance companies in health care by creating a publicly administered health insurance trust fund? The trust fund would receive the funds presently going to the numerous health insurance companies throughout the state.
__________ Yes __________ No
On September 29, 2000, Scharps filed a second amended complaint (the complaint) for declaratory judgment and injunctive relief pursuant to Article V, Section 4 of the Florida Constitution and chapters 26 and 86 of the Florida Statutes. Regarding his standing, Scharps alleged the following:
3. Howard Scharps is resident, citizen and taxpayers [sic] of Alachua County, Florida and has been all times material hereto.
....
46. Plaintiff Scharps opposes the substance of the matter stated in the nonbinding referendum and objects on First Amendment and Florida Declaration of Rights grounds to Board's employment of the power and resources [sic] to the County and the State of Florida to promote one political point of view in the guise of a nonbinding referendum that does not pertain to the functions and powers of county government[.]
In count I of the complaint, Scharps sought a declaratory judgment that the resolution was invalid because the County had no power under section 125.01, Florida Statutes (2000), or Article III of the Florida Constitution, to conduct a referendum to determine elector sentiment on the issue of universal health care. In count II of the complaint, Scharps alleged violations of the First and Fourteenth Amendments to the United States Constitution and the Declaration of Rights in Article I of the Florida Constitution. Scharps sought injunctive relief to either keep the referendum off the November 2000 ballot or, alternatively, to seal the results of such a ballot.
The County asserted numerous defenses, including that Scharps did not have standing to bring the declaratory action against the County. On November 7, 2000, the eve of the election, the trial court rendered an order denying injunctive relief and reserving judgment on declaratory relief, finding that Scharps failed to meet the burden of persuasion that his own injury would outweigh the complications necessary to comply with any injunctive relief.[1] Specifically, the court held,
Plaintiff does not allege personal or financial injury as a result of the tabulating and releasing the votes on the non-binding referendum. Rather, Plaintiff alleges an inability on the part of the Board of County Commissioners to exercise any discretion as to potential future proposed referenda....
Apparently the referendum was held on November 8, 2000.[2]
*198 On March 12, 2002, the trial court entered the final judgment declaring the resolution invalid, finding that the County improperly placed a non-binding referendum regarding universal health care on the November 2000 election ballot. The judgment did not address or explicitly rule on the standing issue. The County filed a timely motion for rehearing, arguing in part that the issue of Scharps' standing was not addressed by the court. The trial court denied the motion for rehearing, and this appeal ensued.

Standard of Review
Determining whether a party has standing is a pure question of law to be reviewed de novo. See Edgewater Beach Owners Ass'n, Inc. v. Walton County, 833 So.2d 215, 219 (Fla. 1st DCA 2002). The trial court failed to explicitly address the arguments as to Scharps' standing to bring this action. The trial court, however, implicitly found there was standing by addressing the merits of appellee's complaint. When standing is raised as an issue, the trial court must determine whether the plaintiff has a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation. See Fox v. Prof'l Wrecker Operators of Fla., Inc., 801 So.2d 175, 178 (Fla. 5th DCA 2001). The trial court should have addressed the standing issue. See Jones v. Dep't of Revenue, 523 So.2d 1211, 1214 (Fla. 1st DCA 1988) ("Before reaching the merits of appellant's challenge, however, it is first necessary to determine whether appellant had standing to challenge the constitutionality of the statute.").
Appellant admits he suffered no special injury, but he alleged in his complaint, asserted at the trial level, and argues on appeal that he is exempt from the special injury rule because he has "taxpayer standing" and constitutional standing. We find he has neither.

Taxpayer Standing
Generally, in order to have standing to bring an action the plaintiff must allege that he has suffered or will suffer a special injury. See Rickman v. Whitehurst, 73 Fla. 152, 157, 74 So. 205, 207 (1917); Godheim v. City of Tampa, 426 So.2d 1084, 1086-88 (Fla. 2d DCA 1983). The special injury requirement, or the "Rickman rule," has an exception "[w]here there is an attack upon constitutional grounds based directly upon the Legislature's taxing and spending power." N. Broward Hosp. Dist. v. Fornes, 476 So.2d 154, 155 (Fla.1985) (emphasis in original) (quoting Dep't of Admin. v. Horne, 269 So.2d 659, 663 (Fla.1972)). When such constitutional grounds exist "there is standing to sue without the Rickman requirement of special injury." Id. (quoting Horne, 269 So.2d at 663). The supreme court refused to depart from this special injury rule or expand this exception. Fornes, 476 So.2d at 155; see also Sch. Bd. of Volusia County v. Clayton, 691 So.2d 1066 (Fla.1997) (reaffirming long-established precedent that taxpayer standing requires special injury on constitutional challenge); Dep't of Revenue v. Markham, 396 So.2d 1120 (Fla.1981) (noting that absent a constitutional challenge, a taxpayer can only have standing upon a showing of special injury which is distinct from that suffered by other taxpayers in the taxing district). Thus, taxpayer standing is available if the taxpayer can show that a government taxing measure or expenditure violates specific constitutional limitations on the taxing and spending power. See Martin v. City of Gainesville, 800 So.2d 687, 688-689 (Fla. 1st DCA 2001); Paul v. Blake, 376 So.2d 256, 259 (Fla. 3d DCA 1979) ("A taxpayer may institute such a suit without a showing of special injury if he attacks ... taxing or spending authority on the ground that it *199 exceeds specific limitations imposed on the... taxing or spending power by the ... Florida Constitution.").[3] Here, appellee generally asserts that the County employed the "powers and resources of the State of Florida or of Alachua County" outside the scope of section 125.01(1)(y), but he does not assert that the County violated a specific taxing and spending power under the state or federal constitution.[4]
The case of Martin v. Gainesville, 800 So.2d at 687, is instructive on this issue. The plaintiff in Martin filed a complaint for a declaratory judgment and injunctive relief as did Scharps in the instant case. There the plaintiff sought to prevent expenditures for a policy with which he disagreed, claiming that these expenditures were in violation of Article VIII, Section 2(b) of the Florida Constitution, which gives municipalities governmental, corporate, and proprietary powers for municipal purposes "except otherwise provided by law." Id. at 688. In Martin this court affirmed the trial court's dismissal for lack of standing, finding that the plaintiff had failed to show that the defendant "violated the specific limitations imposed upon a city in taxing or spending by the Florida Constitution.... [M]ere statutory violations did not constitute `violations of specific provisions of the Florida Constitution.'" Id. at 688 (quoting Fredericks v. Blake, 382 So.2d 368, 370 (Fla. 3d DCA 1980)). Similarly in City of Atlantic Beach v. Bull, 476 So.2d 158 (Fla.1985), the plaintiff relied on the same theory of standing which appellee argues here: he is a citizen, resident and taxpayer, and the local government's action was outside the general powers granted under the Florida Constitution. In Bull, however, the supreme court rejected that standing theory. See also City of Sarasota v. Windom, 736 So.2d 741, 742 (Fla. 2d DCA 1999) (finding no standing where the plaintiffs challenged the city's authority to expend funds for the installation of a specific type of traffic control device); Sch. Bd. of Volusia County v. Clayton, 691 So.2d at 1066 (Fla. 1997) (finding taxpayer did not have standing to challenge school board's purchase of real property pursuant to eminent domain proceeding on ground that school board did not obtain statutorily required extraordinary vote to approve purchase).
As in Fornes, Martin, and Bull, the appellee's general claims of expenditures beyond statutory authority fall short of the requirement that a taxpayer allege violations of specific constitutional limitations on taxing or spending powers in order to avoid the necessity of demonstrating special injury or as a prerequisite for taxpayer standing.

First Amendment Standing
Appellee relies on Falzone v. State, 500 So.2d 1337 (Fla.1987), to support his *200 claim that he also has constitutional standing because he has alleged violations of free speech under the First and Fourteenth Amendments to the United States Constitution and Article I, Section 4 of the Florida Constitution. In Falzone, appellants had been indicted for allegedly failing to file a statement of organization as a political committee as required by certain sections of Florida's Campaign Finance Law. Unlike Scharps, the appellants there had made an explicit facial challenge alleging that the statutes were vague and overbroad. There, the court explained that there is a relaxed standing requirement in overbreadth cases because of the potential chilling effect on First Amendment freedoms. Id. at 1339. In this case, however, no potential chilling effect is implicated.
The exact nature of appellee's first amendment challenge is unclear. However, it seems to be, "[The] board is left in a dilemma: it must either violate the First Amendment by picking and choosing among petitions, or it must grant all petitions and thereby abdicate its power as the constitutionally prescribed exclusive governing body for the county." There is nothing in the record reflecting that the County has picked among petitions or granted all petitions. There is also no indication that appellee was denied access to the referenda process or sought to have a referendum placed on the ballot. In Florida National Organization for Women, Inc. v. State, 832 So.2d 911 (Fla. 1st DCA 2002), the court held that appellants did not have standing to allege a violation of first amendment rights where the facts alleged did not show that appellants' own first amendment rights had not been violated:
Appellants allege that their right to free speech has been violated by the mere existence of the Choose Life plate. As the trial court explained in dismissing Count II, "the facts alleged do not show that any of the plaintiffs have attempted any expression and been denied access to the alleged forum for speech, or that the statutes at issue have hindered or curtailed any plaintiff's speech in any way." Because Appellants have not applied for, and been denied, a pro-choice plate, and have stated their intention not to do so, they cannot amend the count to state a viable claim as they lack standing to do so.
Id. at 915. Because the appellee here is only claiming that there is potential for violating someone's (not even his own) freedom to speech, he does not have standing. Id.; see also Sieniarecki v. State, 756 So.2d 68, 76 (Fla.2000) (denying standing on the ground that a statute may "conceivably" be applied unconstitutionally). Furthermore, appellee has not established that his expression has been chilled or that he has been denied access to the referenda process as set forth by section 125.01. Thus, he has no First Amendment standing.

Equal Protection Standing
Appellee's equal protection argument is premised on the argument that "[b]ecause Board's discretion to pick and choose among petitions for referenda has not been circumscribed by adequate guidelines, general equal protection principles would render [section] 125.01(1)(y) unconstitutional in application." However, because Scharps did not attempt to get an alternative petition placed on the ballot or offer his own ballot for submission, he cannot show that he suffered any discrimination under section 125.01(1)(y). It is not enough that others may be discriminated against in the future.
In Sancho v. Smith, 830 So.2d 856 (Fla. 1st DCA 2002), election supervisors brought a declaratory judgment and injunctive action attacking a statute limiting *201 a ballot summary for a proposed constitutional amendment to 75 words, but exempting summaries submitted by joint resolution of legislature from the brevity requirement. As Scharps does here, the complaint brought an equal protection challenge under the Fourteenth Amendment of the United States Constitution, claiming the statute created an unconstitutional burden on those in the future who would submit a proposed amendment by citizen initiative. This court held that the election supervisors had no standing to bring the equal protection claim because "constitutional rights are personal:"
A party who is not adversely affected by a statute generally has no standing to argue that the statute is invalid. We acknowledge that courts have made an exception to this rule if the party asserting the claim is protecting the rights of non-parties who are unable to challenge the statute on their own. However, the exception does not apply here. Citizens who are adversely affected by the exemption in section 101.161(1), Florida Statutes (2000), can make the argument for themselves.
Id. at 864 (citations omitted); see also Sieniarecki, 756 So.2d at 76 ("[C]onstitutional rights are personal in nature and generally may not be asserted vicariously.").
Similarly, in Shands Teaching Hospital and Clinics, Inc. v. Smith, 480 So.2d 1366 (Fla. 1st DCA 1985), approved, 497 So.2d 644 (Fla.1986), this court held that a hospital lacked standing to assert an equal protection challenge to a statute that made a man liable for medical bills incurred by his wife, but did not also make a woman liable for medical bills incurred by her husband. Although the court agreed that the hospital had a general interest in collecting its debts, the court found that the hospital had no real interest in the argument that the statute unfairly discriminates against men. The equal protection problems at issue in Smith were best raised by men who were affected by the discrepancy or addressed by the legislature. Smith, 480 So.2d at 1367 (Barfield, J., concurring). Because Scharps cannot assert that he personally has suffered discrimination, and citizens who are denied the right to place their non-binding referenda on ballots can make the argument for themselves, Scharps has no standing.
For the reasons expressed herein, we reverse the decision of the trial court and direct that appellee's complaint be dismissed.
BENTON and LEWIS, JJ., CONCUR.
NOTES
[1] Such complications would include changing the already printed ballots, reprogramming the memory cards at the voting stations, and reconfiguring the computer databases.
[2] At oral argument the parties reported that a majority of voters voted "yes." However, neither an actual ballot nor the November 2000 election results are included in the record on appeal.
[3] Appellee relies on Combs v. City of Naples, 834 So.2d 194 (Fla. 2d DCA 2002). There the court found that one of the plaintiffs did have taxpayer standing for the constitutional challenge because the complaint alleged that the city was violating the taxing and spending powers under the Florida Constitution. The opinion, however, is silent as to the exact nature of the challenge. We, therefore, fail to see how it supports appellee's position and are unable to determine whether it is in conflict with this opinion or any cases cited herein.
[4] Appellee relies on the First (freedom of speech and expression) and Fourteenth (equal protection) Amendments to the United States Constitution; Article I, Section 4 (freedom of speech and press) and Article III (legislature) of the Florida Constitution; chapter 86, Florida Statutes (the declaratory judgment statute); and section 125.01(1)(y), Florida Statutes (Fla.2000). None of appellee's assertions, however, constitute a constitutional challenge to the taxing or spending power of the County.