Congressman Robert WEXLER; Commissioner Addie Greene, Commissioner Burt Aaronson and Tony Fransetta, Plaintiffs,

v.

Theresa LEPORE, Supervisor of Elections for Palm Beach County, Florida; Kay Clem, Supervisor of Elections for Indian River County, Florida, and President of the Florida Association of Supervisors of Election; Glenda E. Hood, Secretary of State of Florida, Defendants.

No. 0480216CIVCOHN.

United States District Court, S.D. Florida.

May 24, 2004.

---

13. Chase's Resp. at 9.

14. *See* n. 12, *supra.*

Jeffrey M. Liggio, Liggio Benrubi & Williams, West Palm Beach, FL, for Plaintiffs Robert Wexler, Addie Greene, Burt Aaronson and Tony Fransetta.

Jason Vail, James A. Peters, George Lee Waas, Office of the Attorney General, Department of Legal Affairs, Ronald A. Labasky, Tallahassee, FL, Paul C. Huck, Jr., Office of the Attorney General, Ft. Lauderdale, FL, for Defendants Theresa Lepore and Kay Clem.

Jason Vail, James A. Peters, George Lee Waas, Ronald A. Labasky, Paul C. Huck, Jr., Norman M. Ostrau, Blosser & Sayfie, Ft. Lauderdale, FL, for Defendant Glenda E. Hood.

**1356**

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

COHN, District Judge.

**THIS CAUSE** came before the Court on Defendant Secretary of State Glenda E. Hood's Motion to Abstain and to Dismiss [DE # 13] and Defendants Lepore and Clem's Motion to Dismiss [DE # 17]. Having considered the Motions, Plaintiffs' Responses in opposition [DE## 21 & 22], and Defendants' Replies in support [DE## 27 & 28], as well as the Complaint, the record, and oral argument, the Court finds abstention applicable and dismisses the complaint for lack of subject matter jurisdiction.[1]

### I. BACKGROUND

Plaintiffs brought this action for declaratory and injunctive relief challenging the use of touchscreen paperless voting systems in fifteen counties throughout Florida pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment. Plaintiffs allege that Defendants in certifying, approving, and implementing the use of touchscreen paperless voting systems in fifteen Florida counties, including Palm Beach and Indian River Counties,[2] have created a nonuniform, differential standard with respect to the remaining fifty-two counties in Florida in violation of the due process and equal protection clauses of the Fourteenth Amendment. This differential standard arises from the fact that these certified touchscreen paperless voting systems do not produce a paper trail or paper printout of each vote cast that can be used if a manual recount becomes necessary. Consequently, Plaintiffs allege that the failure to produce a paper printout violates the requirements of due process and equal protection in that citizens in these fifteen counties will not have their votes accurately recorded, reported, counted and recounted, if necessary.

### A. Statutory Framework

Florida's election system consists of the Legislature, the Department of State, and the Election Supervisors of Florida's sixty-seven counties. Within the statutory framework governing elections, the Legislature has authorized the Department of State to issue binding interpretations of the election laws. Fla. Stat. §§ 97.012(1), 106.23(2).

In the 1970s, the Florida legislature enacted the Electronic Voting Systems Act ("the EVSA"), approving electronic equipment for use in the state. Fla. Stat. §§ 101.5601–101.5614. Section 101.5606 of the EVSA specifically sets forth certain requirements that an electronic or electromechanical system must meet in order to be approved by the Department of State. *See* Fla. Stat. §§ 101.5605, 101.5606. In addition to these requirements, the Department of State is responsible both for adopting rules that establish minimum standards for electronic voting systems and for reviewing such rules each odd-numbered year. Fla. Stat. § 101.015. Based on compliance with these requirements and standards, the Department of State has the authority to approve or disapprove any voting system. *See* Fla. Stat. §§ 101.5605, 101.015. Additionally, the Department of State is responsible for adopting uniform rules for the purchase, use, and sale of voting equipment in the state. Fla. Stat. § 101.294. Upon approval of an electronic voting system by the De-

1. Defendants move to dismiss the complaint on several grounds. As the court finds abstention applicable in this case, it lacks subject matter jurisdiction and need not address the remaining grounds for dismissal.

2. In Palm Beach County and Indian River County, Defendants have certified for use the Sequoia AVC Edge Voting System Release 3.1, a specific form of touchscreen paperless voting system.

partment of State, the board of county commissioners of any county, after consultation with the supervisor of elections, may approve, purchase, or procure the use of said voting system. Fla. Stat. § 101.5604; *see also* Fla. Stat § 101.294.

Florida's recount procedures are in turn governed by sections 102.141 and 102.166 of the Florida statutes, which create a two-stage process for recounts. During the first stage, if the margin of victory is one-half of a percent or less, a machine recount occurs. Fla. Stat. § 101.141(6). In counties with voting systems using paper ballots, this recount consists of putting each ballot through the automatic tabulating equipment and determining whether the returns correctly reflect the votes cast. § 101.141(6)(a). The recount in counties not using paper ballots consists of examining the counters on the precinct tabulators to ensure that the total returns on the tabulators equals the overall election return. § 101.141(b).

The second stage of the recount process occurs if the margin of victory is one-quarter of a percent or less. Fla. Stat. § 102.166. In such an instance, "a manual recount of the overvotes and undervotes cast in the entire geographic jurisdiction of such office or ballot measure" shall be conducted. *Id.* When conducting the manual recount, a "vote cast for a candidate or ballot measure shall be counted if there is a clear indication on the ballot that the voter has made a definite choice." Fla. Stat. § 101.166(5)(a). The statute further dictates that the "Department of State shall adopt specific rules for each certified voting system prescribing what constitutes a 'clear indication on the ballot that the voter has made a definite choice,'" Fla. Stat. § 102.166(5)(b), and also "adopt detailed rules prescribing additional recount procedures for each certified voting system which shall be uniform to the extent practicable." Fla. Stat. § 102.166(6)(d).

## B. Voting Systems

Currently, there are two types of electronic voting systems certified for use in Florida: the optical scan system and the touchscreen system. A voter using the optical scan system would mark the ballot by filling in the bubble or completing the arrow next to the candidate of his/her choice, and the ballot would then be run through a tabulation system. In contrast, when using a touchscreen system, a voter does not mark a paper ballot but instead makes selections on a computer screen. The system gives the voter the opportunity to review the selections and it is only after the voter indicates approval, that the selections are recorded in the machine's electronic memory.

In the past, ballot error has occurred in the form of either overvotes or undervotes. Overvotes occur when the voting system determines that the voter has cast more votes in a particular race than permitted in that race, while undervotes occur when the voting system determines that the voter has cast no vote in a particular race, notwithstanding the voter's intent. In optical scan systems, an overvote would exist if the voter mismarked a ballot so that more than one candidate is selected, for example by filling in more than one bubble. The machine could likewise read a ballot as if the voter selected no candidate if, for instance, the voter mismarked the ballot by making marks outside the boundaries of a bubble. The touchscreen system, on the other hand, does not allow a voter to cast a vote for more than one candidate in a particular race and thereby eliminates overvotes. With respect to undervotes, touchscreen machines only permit an undervote after notifying the voter at least once that he/she has not selected a candidate for a particular race as well as giving the voter an opportunity to review the selections before casting his/her ballot.

For these reasons and pursuant to the mandates of Fla. Stat. 101.166, the Department of State, issued Rule No. 1S–2.031 pertaining to recount procedures.[3] The rule provides that "[w]hen a manual recount is ordered and touchscreen ballots are used, no manual recount of undervotes and overvotes cast on a touchscreen system shall be conducted since these machines do not allow a voter to cast an overvote and since review of undervotes cannot result in a determination of voter intent as required by Section 102.166(5)." (Complaint, Exhibit E, Rule 1S–2.031(7)).

### C. State Court Proceedings

Congressman Robert Wexler filed a complaint in the state circuit court on January 16, 2004. Wexler was the sole plaintiff in the state suit. Plaintiffs filed their complaint in this court on March 8, 2004. In the federal suit, Plaintiffs include not only Congressman Wexler, but in addition, Commissioner Addie Greene, Commissioner Burt Aaranson, and Tony Fransetta. But for the Fourteenth Amendment claim, the state complaint is virtually identical to the federal complaint. Wexler's state court complaint, filed against Theresa Lepore, Secretary of State Glenda E. Hood, and the Palm Beach County Board of County Commissioners, also sought declaratory and injunctive relief. It alleged that Defendants, in approving a touchscreen voting machine for use in Palm Beach County, violated the right to vote of Palm Beach County citizens guaranteed by the Florida Constitution. Based on Defendants respective and shared statutory duties, Plaintiff Wexler claims that the Sequoia AVC Edge Voting System Release 3.1 should never have been approved and certified for use in Palm Beach County because it is a paperless voting system and as such, does not allow for a manual recount as specified under sections 102.141 and 102.166 of the Florida statutes. In rendering a manual recount impossible in the event that one becomes necessary, Plaintiff Wexler alleged that the touchscreen paperless voting machines violate the rights of Palm Beach County citizens to have their votes accurately recorded and reported. (*See* state court complaint, *Wexler v. Lepore et al.,* No. 50 2004 CA 000491)

In its February 11, 2004 Order, the state circuit court granted Defendants' Motions to Dismiss finding that Plaintiff Wexler lacked standing to pursue the alleged claims. *See Wexler v. Lepore et al.,* No. 50 2004 CA 000491 (Fla.Cir.Ct. Feb. 11, 2004). The court also found that Plaintiff failed to state a cause of action for injunctive relief because "the Florida statutory scheme does not clearly require a voter verified paper ballot." *Id.* at 7. Subsequently, on February 26, 2004, the state circuit court issued a Final Order of Dismissal With Prejudice. On March 4, 2004, Plaintiff Wexler appealed the state order to the Fourth District Court of Appeal. Four days later, Plaintiffs filed the instant federal complaint. The state appeal has been expedited and is currently pending.

### II. ANALYSIS

■ Defendants Secretary of State Glenda E. Hood, Theresa Lepore, and Kay Clem move to dismiss the complaint, pursuant to Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6), on several grounds. For the reasons explained below, the Court concludes that it lacks subject matter jurisdiction based on the *Younger* abstention doctrine.[4]

---

**3.** Rule No. 1S–2.031 has undergone several changes since it was first promulgated. The Department of State issued a second notice of change to Rule No. 1S–2.031 on February 13, 2004, which is the latest version of the Rule. (Complaint at ¶¶ 28–30).

**4.** Defendants also move to dismiss based on the *Pullman* and *Colorado River* abstention

■ *Younger v. Harris* and its progeny    advocate a strong federal policy against

doctrines. *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Colorado River Water Conservation v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Neither of these abstention doctrines apply.

The *Pullman* abstention doctrine authorizes federal courts to abstain from exercising jurisdiction in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law. *See Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984); *Redner v. City of Tampa*, 723 F.Supp. 1448, 1453 (1989). By abstaining in such cases, federal courts will "avoid unnecessary friction in federal-state functions, tentative decisions on questions of state law, and premature constitutional adjudication." *Siegel v. Lepore*, 234 F.3d 1163, 1174 (2000). Two elements must be met for *Pullman* abstention to apply: (1) the case must present an unsettled question of state law, and (2) the question of state law must be dispositive of the case or would materially alter the constitutional question presented. *Id.*

Under the first element, federal courts need not abstain on *Pullman* grounds when a state statute is not fairly subject to an interpretation which will render unnecessary adjudication of the federal constitutional question. *Midkiff*, 467 U.S. at 236, 104 S.Ct. 2321; *Siegel*, 234 F.3d at 1174. As explained in *Midkiff*, "the relevant inquiry is not whether there is a bare, though unlikely, possibility that state courts might render adjudication of the federal question unnecessary. Rather, we have frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible to a limiting construction." *Id.* at 237, 104 S.Ct. 2321. In the instant case, the relevant question, therefore, is whether the state statutes at issue can be fairly interpreted to require the touchscreen voting machines to issue a paper printout. The Court finds that they cannot. In fact, the state circuit court itself stated that "the Florida statutory scheme does not clearly require a voter verified paper ballot." Given that the first element is lacking, the Court finds *Pullman* abstention inapplicable.

*Colorado River* abstention permits dismissal of a federal suit due to the presence of concurrent state proceedings for reasons of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation" 424 U.S. at 817, 96 S.Ct. 1236. Application of *Colorado River* hinges on the balancing of six factors: (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) whether federal or state law will be applied, and (6) the adequacy of each forum to protect the parties' rights. *Moses H. Cone Memorial Hospital v. Mercury Constr. Co.*, 460 U.S. 1, 15–16, 23–27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). These factors must be carefully balanced, with "the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16, 103 S.Ct. 927.

The Court finds that based on the fifth factor, *Colorado River* abstention does not apply. The instant case involves only federal questions of law pertaining to the Fourteenth Amendment. With respect to the fifth factor, the Supreme Court has stated that "(a)lthough in some rare circumstances the presence of state-law issues may weigh in favor of that surrender [of jurisdiction], the presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H.*, 460 U.S. at 25, 103 S.Ct. 927. Moreover, those cases in the Eleventh Circuit finding *Colorado River* abstention applicable all involved either issues of state law alone or involved application of federal and state law in both the state and federal proceedings. *See Ambrosia Coal & Constr. v. Pagés Morales*, No. 01–12714, 2004 WL 983807 (11th Cir. May 6, 2004); *Lisa v. Mayorga*, 232 F.Supp.2d 1325 (S.D.Fla.2002); *Redner*, 723 F.Supp. 1448; *Boca Raton Airport, Inc. v. Boca Raton Airport Auth.*, No. 00–8488–CIV–RYSKAMP, 2000 WL 963365 (S.D.Fla. June 24, 2000). In cases involving only federal law, the Eleventh Circuit has declined to apply *Colorado River* abstention. *See Lops v. Lops*, 140 F.3d 927 (11th Cir. 1998); *Forehand v. First Alabama Bank of Dothan*, 727 F.2d 1033 (11th Cir.1984). As this case was brought pursuant to § 1983 and the Fourteenth Amendment, the Court declines to apply *Colorado River*.

federal-court interference with pending state judicial proceedings absent extraordinary circumstances.[5] 401 U.S. 37, 91 S.Ct. 746; *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432–35, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).[6] In *Younger,* the Supreme Court held that a federal court should not act to restrain an ongoing state court criminal prosecution. *Id.* at 41, 91 S.Ct. 746. Although *Younger* concerned pending state criminal proceedings, the doctrine has been extended to noncriminal proceedings when important state. interests are concerned.[7] *See Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Middlesex,* 457 U.S. at 432, 102 S.Ct. 2515. At the heart of *Younger* abstention is the vital consideration of comity between the state and national governments. As the *Younger* court aptly put it, the notion of comity signifies:

a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism," and one familiar with the profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." *Id.* at 44, 91 S.Ct. 746. Moreover, this dual dignity of federal and state court decisions signifies that "a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is

**5.** In *Younger,* the Supreme Court laid down three extraordinary circumstances to the abstention doctrine, making abstention unwarranted if: (1) there is evidence of state proceedings motivated by bad faith, (2) the state law being challenged is patently unconstitutional, or (3) there is no adequate alternative state forum where the constitutional issues may be raised. 401 U.S. at 45, 53–54, 91 S.Ct. 746.

**6.** Defendants also argue that the *Rooker–Feldman* abstention doctrine applies. *See Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Though *Rooker–Feldman* and *Younger* abstention are closely related, the key difference is that *Rooker–Feldman* applies to final judgments of state courts rather than to pending state court proceedings. *Goodman v. Sipos,* 259 F.3d 1327 (11th Cir.2001). In *Rooker,* the Supreme Court held that a federal district court may not review the final decisions of a state court of competent jurisdiction. Such review rests solely in the United States Supreme Court. *Feldman,* 460 U.S. at 482, 103 S.Ct. 1303. Additionally, a decision of a state court is not final until it has completed its

course through the state appellate process or the time for appeal has expired. *See The News–Journal Corp. v. Foxman,* 939 F.2d 1499, 1510 n. 13 (11th Cir.1991)("In this case, the decision of the Fifth District Court of Appeal was not final until rehearing was denied and review was denied by the Florida Supreme Court"); *Liedel v. Juvenile Court of Madison County, Alabama,* 891 F.2d 1542, 1545 (11th Cir.1990)(the requested relief "would effectively nullify those state orders, which became final after the Liedels' petition for writ of certiorari was denied by the Alabama Supreme Court."). In this case, Plaintiff Wexler appealed the state circuit court decision to the Fourth District Court of Appeal on March 4, 2004. Since the state case is currently pending before the appellate state court, *Rooker–Feldman* abstention does not apply as a final state court decision has not yet been issued.

**7.** Plaintiffs incorrectly argue in their Response to Defendant Secretary of State Glenda Hood's Motion to Dismiss that *"Younger* abstention simply does not apply to a civil action brought by private parties." *Pennzoil Co. v. Texaco, Inc.,* however, involved a dispute between private parties. 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987).

located." *Powell v. Powell,* 80 F.3d 464, 467 (11th Cir.1996)(quoting *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

## A. The Middlesex Factors

The Supreme Court in *Middlesex* applied the following three factors in determining the applicability of *Younger* abstention: (1) do the proceedings constitute an ongoing state proceeding, (2) do the proceedings implicate important state interests, and (3) is there an adequate opportunity in the state proceedings to raise constitutional challenges. *Middlesex,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *31 Foster Children v. Bush,* 329 F.3d 1255 (11th Cir.2003).

### 1. Ongoing State Proceedings

In examining the first factor, the Eleventh Circuit has clarified that the analysis must consider the timing of the federal complaint as well as whether the federal proceeding would interfere with the ongoing state proceedings. *News–Journal,* 939 F.2d at 1510; *31 Foster Children,* 329 F.3d at 1276. The Eleventh Circuit has specifically stated that "the date of the filing of the federal complaint is the relevant date for purposes of determining *Younger's* applicability" since abstention "applies if state court proceedings were pending at the time of the filing of the federal complaint." *News–Journal,* 939 F.2d at 1510. In *News–Journal* the federal action was begun while the state court case was pending before the intermediate Florida appellate court. *Id.* Here, Plaintiffs similarly filed the federal complaint on March 8, 2004, nearly two months after instituting the state action and while the state action was pending on appeal.

With respect to the determination of whether interference will result, the court must examine the relief sought and determine "the effect of the requested relief on the state proceedings." *31 Foster Chil-*

*dren,* 329 F.3d at 1275–76. *Younger* applies not only if the relief *directly* interferes with an ongoing state proceeding, but also when the relief would *indirectly* interfere by disrupting the normal course of proceedings in state court. *Id.* (citing *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). In *O'Shea v. Littleton,* the Supreme Court extended the *Younger* abstention doctrine to cases involving indirect interference with state proceedings. 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Plaintiffs in *O'Shea* brought a civil rights action charging a county magistrate and circuit court judge with engaging in conduct consisting of illegal bond setting, sentencing, and jury fee practices in criminal cases and sought to enjoin such practices. *Id.* at 491–92, 94 S.Ct. 669. The Court noted that plaintiffs did not seek to enjoin any pending criminal prosecutions or strike down a state statute, but rather sought an "injunction aimed at controlling or preventing the occurrence of specific events that might take place in the course of future criminal proceedings." *Id.* at 500, 94 S.Ct. 669. The Court explained that an injunction seeking to stop the defendant judges from engaging in the alleged practices would disrupt the normal course of proceedings in state court because "it would require for its enforcement the continuous supervision by the federal court over the conduct of the petitioners in the course of future criminal trial proceedings." *Id.* at 501, 94 S.Ct. 669. Therefore, although the relief requested did not seek to directly enjoin a pending state proceeding as established by the *Younger* abstention doctrine, it would nevertheless "indirectly accomplish the kind of interference" that *Younger* sought to prevent. *Id.* at 500, 94 S.Ct. 669.

The Eleventh Circuit applied the indirect analysis of *O'Shea* in *Luckey v. Miller.* 976 F.2d 673 (11th Cir.1992). In *Luckey,* Plaintiffs brought an action claim-

ing that Georgia's indigent defense system was incapable of providing constitutionally adequate services. 976 F.2d 673 (11th Cir. 1992). They sought an injunction reforming the indigent defense system, including orders that the system provide speedy appointment of counsel, provide counsel at probable cause determinations, and provide adequate services and experts. The relief also requested that the court monitor implementation of the injunction. 976 F.2d at 676. Plaintiffs admitted that they did not seek to contest any criminal conviction nor restrain any criminal prosecution, but rather sought only to have the court consider systemic issues. *Id.* at 677. To this end, the court stated that "[a]lthough it is true that Plaintiffs do not seek to contest any single criminal conviction nor restrain any individual prosecution, it is nonetheless clear that plaintiffs intend to restrain every indigent prosecution and contest every indigent conviction until the systemic improvements they seek are in place." *Id.* Therefore, as established under *O'Shea* and *Luckey*, indirect interference occurs when the federal plaintiffs do not seek to enjoin or terminate an ongoing state proceeding dealing with the same or related issues, but when the relief requested would interfere with future proceedings or with the state judicial process.

In this case, in contrast, Plaintiffs are seeking to directly interfere with an ongoing state proceeding. Unlike in *O'Shea* and *Luckey*, there is a pending state proceeding already dealing with the validity of touchscreen voting machines. Moreover, upon examining "the effect of the requested relief on the state proceedings," it is clear that Plaintiffs are seeking to directly interfere with the state suit. *31 Foster Children*, 329 F.3d at 1275–76. Here, Just as in the state court action, Plaintiffs seek declaratory and Injunctive relief in the form of a court order mandating that the Department of State and the Supervisors of Elections correct the alleged violations brought on by the use of touchscreen paperless voting systems and notify the Court of their progress. A decision in favor of the plaintiffs would effectively halt the state court proceedings, which are currently deciding the same issues with respect to the touchscreen machines. Thus, this Court would directly interfere with the state court's decision, exactly the kind of interference *Younger* abstention is meant to prevent.

### 2. Important State Interests

The second factor in the *Younger* abstention inquiry involves determining whether the proceedings implicate important state interests. In this case, Plaintiffs request that the Court become deeply involved with election legislation and election procedures, which the Constitution and the Supreme Court have delegated to the states. *See* Art I, § 4, cl. 1; *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S.Ct. 2059, 119 L.Ed.2d 245 ("the Court therefore has recognized that States retain the power to regulate their own elections."); *Weber v. Shelley*, 347 F.3d 1101, 1105 ("it is also clear that states are entitled broad leeway in enacting reasonable, even-handed legislation to ensure that elections are carried out in a fair and orderly manner."). Since the regulation of elections has traditionally fallen to the states rather than the federal government, adjudication of this case clearly implicates important state interests.

### 3. Opportunity to Raise Constitutional Challenge

Under the third factor, the Court must examine whether the plaintiffs had an adequate opportunity in the state proceedings to raise constitutional challenges. The issue under this determination is not whether the plaintiffs did include the constitutional challenges in the state court action,

but whether they could have. In *Middlesex*, the court admonished the respondent for arguing that he had no opportunity in the state proceedings to raise the federal constitutional challenge given that he "failed even to *attempt* to raise any federal constitutional challenge." 457 U.S. at 435, 102 S.Ct. 2515 (emphasis in the original). The Eleventh Circuit has also stated that "when state proceedings are pending, constitutional issues should be raised in that forum, 'unless it plainly appears that this course would not afford adequate protection.'" *News–Journal*, 939 F.2d at 1508 (quoting *Younger*, 401 U.S. at 45, 91 S.Ct. 746). The *News–Journal* Court then explained that the Supreme Court has determined the state forum to be inadequate in situations where the state tribunals are biased on the issue before them or if the state procedures are unconstitutional. *Id.* at 1508 n. 10. Yet, "[r]arely do demonstrable bias or unconstitutional proceedings exist in state courts making that judicial forum inadequate for federal constitutional claims." *Id.*

Minimal respect for the state processes, precludes any presumption that the state courts will not safeguard federal constitutional rights. *Middlesex*, 457 U.S. at 431, 102 S.Ct. 2515. In fact, "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987). As Plaintiff Wexler has failed to raise the constitutional challenge in the state case, he must overcome this initial presumption by demonstrating that the state remedies are inadequate. *31 Foster Children*, 329 F.3d at 1279. Here, Plaintiff Wexler has done no such thing. He has not only failed to include his federal constitutional challenge in the state court action, but has also failed to demon-

strate that the state remedies are inadequate. Even though the additional plaintiffs are not parties in the state court proceedings, they have also failed to demonstrate that the state court action is inadequate to address their interests. As will be discussed next, *Younger* abstention still applies to these additional Plaintiffs for the very reason that they share the same interests as Wexler.

## B. Younger's Application to Nonparties

■ The only remaining issue this Court needs to resolve is whether *Younger* applies to the additional Plaintiffs that are not parties to the state court proceedings, which in this case includes Commissioner Greene, Commissioner Aaranson, and Tony Fransetta. Based on the authority cited below, the Court concludes that when the interests of a new party are so intertwined with those of a state court party, *Younger* still applies.

Two Supreme Court cases have dealt with this issue: *Hicks v. Miranda* and *Doran v. Salem*. In *Hicks*, the Court ruled that *Younger* applied even though the parties in the federal suit were not named parties in pending state criminal proceedings. 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). After two employees were charged under a state obscenity statute for showing a film, and four copies of the film were seized, owners of the adult movie theater showing the movie sued in federal court for return of their films and for an injunction against enforcement of the statute. The Court found that *Younger* applied because the federal plaintiffs had a "substantial stake in the state proceedings." 422 U.S. at 349, 95 S.Ct. 2281. The owners' "interests and those of their employees were intertwined" given that the seized films were central to the state court prosecution even though they be-

longed to the theater owners. Their interests were so intertwined, the Court noted, "that they sought federal relief, demanding that the state statute be declared void" and "sought to interfere with the pending state prosecution." *Id.*

In *Doran v. Salem*, three bar owners sought an injunction in federal court against the operation of a local ordinance prohibiting topless entertainment bars. 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). Two of the bars complied with the ordinance, while the third did not, which resulted in criminal proceedings instituted against it. The Court determined that *Younger* abstention did not apply to the two remaining bars even though they shared the same interests in declaring the ordinance unconstitutional, and concluded the following:

> While there plainly may be circumstances in which legally distinct parties are so closely related that they should all be subject to Younger considerations which govern any one of them, this is not such a case;while respondents are represented by common counsel, and have similar business activities and problems, they are apparently unrelated in terms of ownership, control, and management."

422 U.S. at 928, 95 S.Ct. 2561. Though the Court never explicitly said so, the case implied that the two bars which had abided by the ordinance should not be punished by having their federal suit dismissed as a result of the actions of an independent party "who subjected itself to prosecution for violation of the ordinance." 422 U.S. at 929–30, 95 S.Ct. 2561.

Subsequently in *Robinson v. Stovall*, the Fifth Circuit analyzed a situation involving federal plaintiffs who were not subject to prosecution in state court under the framework established by *Hicks* and *Doran*. 646 F.2d 1087 (5th Cir.1981).[8] The suit challenged a local ordinance regulating public marches and involved both plaintiffs who had been arrested pursuant to the ordinance and plaintiffs who had not. The Court did not apply *Younger* to the non-arrested plaintiffs, finding the case to be more like *Doran* than *Hicks*. Given that the non-arrested plaintiffs were not seeking to directly interfere with an ongoing state proceeding, the court determined that the interests of the non-arrested and arrested plaintiffs were not so inextricably intertwined to justify abstention simply because plaintiffs were all members or supporters of a particular organization. However, the court stated that "Younger ordinarily bars a federal suit that seeks directly to enjoin a state prosecution, no matter who is the federal plaintiff." *Id.* at 1090. The plaintiffs did not seek direct interference, but sought "only prospective relief, an injunction against future arrests or harassment, and a declaratory judgment that the first amendment protects their rights to stage further marches without complying with the parade ordinance." *Id.* at 1090–91.

Under the present circumstances, the Court finds that *Younger* applies to nonparties in the state proceedings for two reasons. First, based on *Robinson*, an attempt to directly interfere with ongoing state proceedings extends *Younger* abstention to nonparties. As discussed above, Plaintiffs are attempting to directly interfere with the state case. The timing of the federal suit speaks volumes with respect to the intent of the Plaintiffs. They did not file the federal suit until after the state circuit court had issued a ruling against

---

**8.** All cases decided by the Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981 are binding on the Eleventh Circuit and on all the district courts within the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 & 1209 (11th Cir.1981).

Wexler, filing the federal complaint four days after appealing the state court decision.[9] Moreover, the addition of Greene, Aaranson, and Fransetta to the federal lawsuit filed days after the dismissal of the state suit raises concerns of their addition solely for purposes of defeating arguments based on abstention. In the context of other abstention doctrines, courts have been loath to find jurisdiction when the federal suit is filed in reaction to a state court decision. In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, the Supreme Court stated that "the vexatious or reactive nature of either the federal or the state litigation" should be considered when deciding whether to defer to parallel state litigation. 460 U.S. 1, 17 n. 10, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Though the case dealt specifically with the *Colorado River* abstention doctrine, this consideration is equally applicable to the case at hand.

Second, the Court finds *Hicks* applicable to the circumstances of this case and finds that the interests of the additional Plaintiffs are so inextricably intertwined with the interests of Wexler in the state court case as to make *Younger* applicable. The Court is not persuaded by *Doran*, which involved a situation where abstention would have effectively punished the two additional parties for the criminal acts of the independent third plaintiff. Unlike *Doran*, the state case initiated by Wexler is a civil proceeding and abstention will not punish or prejudice the additional plaintiffs whose rights are equally encompassed within the state court suit. Both the state and federal suits revolve around the right to vote, a fundamental right that affects all citizens of Florida equally. The Interests of the additional Plaintiffs and Wexler in the state proceedings are indistinguish-

able. Green, Aaronson, and Fransetta's interests as voters and candidates for re-election are exactly the same as Wexler's state court interest as a voter and a candidate. Therefore, the parties' interests are such that this case is one "in which legally distinct parties are so closely related that they should all be subject to Younger considerations which govern any one of them." *Doran*, 422 U.S. at 928, 95 S.Ct. 2561.

For the foregoing reasons, the Court finds that *Younger* abstention applies to this case. Not only have all the *Middlesex* factors been met, but the Court finds *Younger* applicable to the additional Plaintiffs in this action both because Plaintiffs seek to directly interfere with the state court proceedings and because the interests of the additional Plaintiffs in the federal suit are inextricably intertwined with Wexler's interests in the state case.

### III. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant Secretary of State Glenda E. Hood's Motion to Abstain and to Dismiss [DE # 13] and Defendants Lepore and Clem's Motion to Dismiss [DE # 17] are hereby **GRANTED**.

This action/case is hereby **DISMISSED**. The clerk of the court is instructed to close this case. All pending motions are **DENIED AS MOOT**.

---

9. As Defendant Hood stated in her Reply, "[o]nly after the state court rendered an unsatisfactory judgment (from Wexler's perspective) did Wexler (this time joined by Greene, Aaranson and Fransetta) file suit in this Court." (DE # 27 at 4)