878 So.2d 1276 (2004)
Congressman Robert WEXLER, Appellant,
v.
Theresa LEPORE, Supervisor of Elections for Palm Beach County, Florida, and Glenda E. Hood, Secretary of State, Appellees.
No. 4D04-918.
District Court of Appeal of Florida, Fourth District.
August 6, 2004.
*1277 Jeffrey M. Liggio of Liggio, Benrubi & Williams, P.A., West Palm Beach, for appellant.
*1278 Bernard Lebedeker of Burman, Critton, Luttier & Coleman, West Palm Beach, for appellee Theresa Lepore.
Charles J. Crist, Jr., Attorney General, and George Waas, Special Counsel, Tallahassee, for appellee Glenda E. Hood.
Gregory J. Shibley, North Palm Beach, and Randall C. Marshall, ACLU Foundation of Florida, Inc., Miami, for Amicus Curiae, American Civil Liberties Union of Florida, Inc.
PER CURIAM.
Congressman Robert Wexler appeals the dismissal of his complaint seeking declaratory and injunctive relief. The Congressman filed suit against Palm Beach County Supervisor of Elections Theresa Lepore and Secretary of State Glenda E. Hood,[1] as a candidate for re-election and a registered voter in Palm Beach County. While we conclude Congressman Wexler did have standing, we nevertheless affirm the dismissal of the complaint.

Facts
The complaint alleged the following. The defendants share a statutory duty to ensure that each Palm Beach County citizen's vote is accurately recorded and reported, including any recount. Section 102.166(1) and (2), Florida Statutes (2003), specifically require a manual recount. The touchscreen voting equipment currently in use in Palm Beach County fails to provide the statutorily-required manual recount. As a registered voter and candidate for re-election in November 2004, Congressman Wexler was in doubt as to his rights in the event a recount was required. He requested the court declare that the defendants failed to comply with their statutory duty to approve and recommend a system in compliance with Florida law.
As to his claim for injunctive relief, Congressman Wexler alleged the acts and omissions of the defendants posed an immediate threat to the rights of voters and political candidates and there was no adequate remedy at law. He requested the court require the defendants to immediately take the necessary steps to correct the statutory non-compliance prior to the next election.
In dismissing the complaint with prejudice, the trial court held Congressman Wexler lacked standing to bring the suit. The court further held he failed to state a cause of action for injunctive relief and that any attempt to amend the complaint would be futile. The court found Secretary Hood's motion to change venue to Leon County was moot.

Florida's Statutory Voting System Framework[2]
Following the 2000 elections, the Florida Legislature enacted "The Electronic Voting Systems Act," which authorized the use of electronic and electromechanical voting systems. See §§ 101.5602, 101.5603 Fla. Stat. (2003). Sections 101.5605 and 101.5606, Florida Statutes (2003), set forth the requirements for approval of electronic or electromechanical systems.
The Department of State is responsible for adopting rules establishing minimum standards for hardware and software for electronic voting systems and reviewing such rules each odd-numbered year. See § 101.015(1) & (5), Fla. Stat. (2003). It has the authority to approve or disapprove any voting system. See §§ 101.015 & 101.5605, Fla. Stat. (2003). The Board of *1279 County Commissioners, after consultation with the Supervisor of Elections, may approve, purchase or procure the use of, an approved voting system. See § 101.5604, Fla. Stat. (2003).
Florida's recount procedures are governed by sections 102.141 and 102.166, Florida Statutes (2003), which contain procedures for recounts in two instances. The first instance occurs when the margin of victory is one- half of a percent or less. In this instance, a machine recount occurs. See § 102.141(6), Fla. Stat. (2003).
The legislature purposely distinguished the method for machine recounts in jurisdictions using electronic systems and those using paper ballots. In counties with paper ballot systems, the recount consists of putting each ballot through the automatic tabulating equipment and determining whether the returns correctly reflect the votes cast. See § 102.141(6)(a), Fla. Stat. (2003). For counties using electronic systems, the recount consists of examining the counters on the precinct tabulators to ensure the total returns on the tabulators equal the overall election return. See § 102.141(6)(b), Fla. Stat. (2003).
The second instance in which a recount occurs is when the margin of victory is one-quarter of a percent or less. See § 102.166, Fla. Stat. (2003). In that instance, the board responsible for certifying the results of the vote shall order a manual recount of the overvotes and undervotes cast in the entire geographic jurisdiction of such office or ballot measure. See § 102.166(1), Fla. Stat. (2003). When conducting the manual recount, a vote cast for a candidate or ballot measure shall be counted if there is a clear indication on the ballot that the voter has made a definite choice. See § 102.166(5)(a), Fla. Stat. (2003). The Department of State is tasked with adopting specific rules for each certified voting system prescribing what constitutes a "clear indication on the ballot that the voter has made a definite choice." See § 102.166(5)(b), Fla. Stat. (2003).
Pursuant to the mandate of section 102.166(5)(b), the Department of State issued Rule No. 1S-2.031 (amended April 13, 2004), pertaining to recount procedures.[3] Rule 1S-2.031(7), Florida Administrative Code, provides that:
When a manual recount is ordered and touchscreen ballots are used, no manual recount of undervotes or overvotes cast on a touchscreen system shall be conducted since these machines do not allow a voter to cast an overvote and since a review of undervotes cannot result in a determination of voter intent as required by Section 102.166(5), F.S. In this case, the results of the machine recount conducted pursuant to (5)(c) shall be the official totals for the touchscreen ballots.
Two types of electronic voting systems are certified for use in Florida, the optical scan and the touchscreen. Palm Beach County utilizes the touchscreen system. With a touchscreen system, a voter does not mark a paper ballot, but instead makes selections on a computer screen. The system gives the voter the opportunity to review the selections and it is only after the voter indicates approval that the selections are recorded in the machine's electronic memory. See Wexler v. Lepore, 319 F.Supp.2d 1354 (S.D.Fla.2004).
These are the facts. The issues involve standing, the sufficiency of the Congressman's claims for declaratory and injunctive *1280 relief, and venue.[4]

Standing
Whether a party has standing to bring an action is a question of law to be reviewed de novo. See Alachua County v. Scharps, 855 So.2d 195, 198 (Fla. 1st DCA 2003). In conducting the review, this court accepts the allegations in the complaint as true. See Hospice of Palm Beach County, Inc. v. State, Agency for Healthcare Admin., 876 So.2d 4 (Fla. 1st DCA 2004). The party must allege that he has suffered or will suffer a special injury. See Scharps, 855 So.2d at 198. Thus, the court must determine whether the plaintiff has a sufficient interest at stake in the controversy which will be affected by the outcome of the litigation. See id.
Both Secretary Hood and Supervisor Lepore argue that because Congressman Wexler faces no opposition in the upcoming election, he has been effectively re-elected, and has no standing as a candidate. We reject that argument. We hold that Congressman Wexler has standing to bring this action in his capacity as a candidate seeking re-election.
His lack of opposition does not alter the fact that he is, and likely will be, a candidate for re-election to public office. He has an interest in the problem or controversy concerning the current manual recount process. It is a problem which is capable of repetition, yet may evade review. See Holly v. Auld, 450 So.2d 217, 218 (Fla.1984) (mootness does not destroy an appellate court's jurisdiction when questions raised are of great public importance or are likely to recur); see also Kelley v. Rice, 800 So.2d 247, 250 (Fla. 2d DCA 2001) (mootness does not destroy a court's jurisdiction if the question raised is of great public importance or if the error is capable of repetition yet evading review). Because we find standing on this basis, we decline to address the remaining standing issues.

Declaratory Relief
The trial court dismissed the complaint on the basis of standing; it did not expressly determine whether Congressman Wexler stated a cause of action for declaratory relief. The court, however, indicated any attempt to amend the complaint to raise a cognizable constitutional claim would be futile. In essence, the court implied a failure to state a cause of action for declaratory relief. As the election rapidly approaches, the issue of failure to state a cause of action must be addressed.
In essence, Congressman Wexler alleged section 102.166, Florida Statutes (2003), mandates a manual recount and the touchscreen system cannot comply with this mandate. This places Secretary Hood in violation of her statutorily-imposed duty to approve a system in compliance with the law. It also places Supervisor Lepore in violation of her statutorily-imposed duty to recommend a system in compliance with the law. We disagree.
With regard to a recount, section 102.141(6)(a) and (b), Florida Statutes (2003), makes an express distinction between voting systems which use paper ballots and those that do not. In counties that do not use paper ballots, the counters of the precinct tabulators are presumed correct. See § 102.141(6)(b), Fla. Stat. (2003). In stark contrast, in counties that use paper ballots, the canvassing board, in the event of a recount, shall put each ballot through automatic tabulating equipment and determine whether the returns correctly *1281 reflect the votes cast. If a ballot is physically damaged so that it cannot be properly counted, there is a procedure in place to take corrective measures to repeat the count. See § 102.141(6)(a), Fla. Stat. (2003).
Despite this difference, section 102.166, which applies when the margin of victory is one quarter of a percent or less, continues to mandate manual recounts of overvotes and undervotes. See § 102.166(1) & (2), Fla. Stat. (2003). This subsection does not make a distinction for recounts when a paperless voting system is in use. However, within that same subsection is a provision for the promulgation of rules concerning recount procedures.
The Legislature delegated authority to the Secretary of State to adopt rules for the certification of each electronic voting system. See § 101.015(1), Fla. Stat. (2003). The Department is further charged to adopt rules for each voting system which it certifies regarding what constitutes a "clear indication" of voter choice, see § 102.166(5)(b), and "detailed rules prescribing additional recount procedures for each certified voting system which shall be uniform to the extent practicable." See § 102.166(6)(d), Fla. Stat. (2003). Pursuant to that authority the Secretary has now adopted rules which do not require a manual recount on certified touchscreen systems. The rule does not require a recount of overvotes, because the system does not permit them. As to undervotes, where a voter has not cast a recognized vote in a particular race or ballot measure, the rule requires no manual recount "since a review of undervotes cannot result in a determination of voter intent as required by Section 102.166(5), F.S." Fla. Admin. Code R. 1S-2.031.
The Congressman requested a declaratory judgment that the Secretary and Supervisor of Elections were in violation of their statutory duties. The Secretary's duty was to adopt regulations pursuant to the statutes regarding voting methods, including approval of voting systems, and recounting votes. The Secretary has now done that. Whether these rules and regulations constitute an invalid exercise of delegated legislative authority is first subject to administrative challenge. See § 120.56, Fla. Stat. (2003). The adoption of the rules has rendered the Congressman's request for a declaratory judgment moot. He must now challenge the adopted rules.[5]

Injunctive Relief
The trial court also held Congressman Wexler failed to state a cause of action for injunctive relief. The court held that under sections 101.5603(2) and (8) and 102.141(6)(b), the statutory scheme did not require a voter-verified paper ballot; therefore, Congressman Wexler did not have a clear legal right to an injunction ordering the creation of such ballots. Further, the court held relief should be sought in the legislative or executive branches of government.
To state a cause of action for injunctive relief, the moving party is required to prove the following: "(1) he will suffer irreparable harm unless the status quo is maintained; (2) he has no adequate remedy at law; (3) he has a clear legal right to the relief granted; and (4) a temporary injunction will serve the public interest." See generally Duryea v. Slater, 677 So.2d 79, 81 (Fla. 2d DCA 1996). The movant must also establish a substantial likelihood of success on the merits. See In re Guardianship of Schiavo, 792 So.2d 551, 562 (Fla. 2d DCA 2001).
The court correctly held Congressman Wexler failed to show he had a clear legal *1282 right to the injunction. In fact, when the statutes are read as a whole, they demonstrate the Congressman has no legal right to an injunction. There is, therefore, little likelihood of success on the merits.
Congressman Wexler also failed to allege a "palpable violation" sufficient to seek redress in a court of equity. In Joughin v. Parks, 107 Fla. 833, 143 So. 145 (1932), the Florida Supreme Court held that:
An injunction will not issue for the purpose of restraining the holding of an election, or of directing or controlling the mode in which, or of determining the rules of law in pursuance of which, an election shall be held, because the holding and conduct of an election during its progress is a political matter with which courts of equity have nothing to do.
Id. at 145. Only where, prior to an election, a palpable violation of the registration or election laws is about to take place, is an injunction an appropriate remedy. See id.
The rule is well-settled that equity will neither determine questions involving rights that are purely political nor will it undertake the protections of such rights by the writ of injunction. See Joughin v. Parks, 107 Fla. 833, 147 So. 273, 273 (1933). Since neither defendant has violated any statutorily-mandated duty, there is no palpable threat at issue.

Conclusion
We recognize the right to vote is fundamental. However, there is no guarantee of a perfect voting system. See Weber v. Shelley, 347 F.3d 1101, 1105 (9th Cir.2003). States are entitled to broad leeway in enacting reasonable, even-handed legislation to ensure that elections are carried out in a fair and orderly manner. See id.
As in Weber, we cannot say the use of a paperless voting system severely restricts the right to vote in the State of Florida. "No balloting system is perfect. Traditional paper ballots, as became evident during the 2000 presidential election, are prone to overvotes, undervotes, `hanging chads,' and other mechanical and human errors that may thwart voter intent. See generally Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000)." Id. at 1106.
By enacting the Electronic Voting Rights Act, the Legislature allowed for the certification of a touchscreen voting system. See §§ 101.015 & 101.5606, Fla. Stat. (2003). In this case, the touchscreen system utilized in Palm Beach County is a system certified for use by the Secretary of State. The Secretary performed her statutory duty. In the same fashion, Election Supervisor Lepore recommended a certified system to the Palm Beach County Board of County Commissioners. "So long as their choice is reasonable and neutral, it is free from judicial second-guessing." Weber, 347 F.3d at 1107.
AFFIRMED.
WARNER, SHAHOOD and MAY, JJ., concur.
NOTES
[1] Congressman Wexler also named the Palm Beach County Board of County Commissioners as a defendant, but dismissed it voluntarily.
[2] See Wexler v. Lepore, 319 F.Supp.2d 1354 (S.D.Fla.2004).
[3] It should be noted that the rule had not been amended when Congressman Wexler filed his complaint.
[4] Because the trial court dismissed the complaint with prejudice, it determined the venue issue to be moot. We agree.
[5] The court understands that a challenge to the administrative rule is pending.