GRIFFIN, J.
St. Johns River Water Management District [“the District”] appeals a final declaratory judgment in which the trial court decreed that the District lacked authority to take administrative action against Frank H. Molica and Linda M. Molica [“the Molieas”] for the clearing, dredging and filling of wetlands on approximately three and one-half acres of their land, which they use for agriculture. Although the legislative scheme is about as clear as ditch water, we conclude that the District does have that authority. Accordingly, we reverse.
On August 8, 2008, the District filed an administrative complaint and proposed order directed to the Molieas’ activities, which included the following findings of fact and conclusions of law:

FINDINGS OF FACT

1[.] The District, a special taxing district created by Chapter 373, Florida Statutes (FS), is charged with the duty to prevent harm to the water resources of the District, and to administer and enforce Chapter 373, FS, and the rules promulgated thereunder[.]
2[.] The District is specifically authorized to administer and enforce the management and storage of surface waters and the environmental resource permitting programs in Sections 373[.]413 and 373[.]416, FS[.] In part, the District has implemented these statutes through Chapter 40C-4, Florida Administrative Code (FAC)[.]
3[.] Respondents own or control approximately 3[.]47 acres of real property, hereinafter “the property”, located in Brevard County, Floridaf.] The Bre-vard County Property Appraiser identifies the real property as Parcel No[.] 24-36-15-00-00764 0-0000 00 and gives it a location of the southwest quarter of the southeast quarter and part of lot 4 lying east of North Tropical Trail as described in ORB 173 Page 154 of the official records of Brevard County, Florida[.] 4[.] Beginning in 2004, Respondents cleared vegetation on the property, excavated earth on the property, including dredging in a hardwood swamp wetland on the property, and placed fill in the hardwood swamp wetland on the property[.]
5[.] The Respondents undertook land clearing, dredging, and filling in the wetland on the property without having a current, valid permit from the District^] 6[J Rule 40C~4[.]041(2)(b)8, FAC, states that a permit must be obtained from the District prior to construction of a surface water management system which is wholly or partially in a wetland[.]

CONCLUSIONS OF LAW

7[.] The District has jurisdiction over Respondents, the subject property, and *767 the activities thereon described in paragraphs 4 and 5 above[.] Sections 373[.]069(2)(c), 373[.]413, 373[.]414, 373[.]416, FS[J
8[.] The District is authorized to administer and enforce the permitting programs established by section 373[.]413, 327[.]414,[1] and 373[.]416, FS[J The District has implemented these statutes, in part, through Chapter 40C-4, FAC, and the Applicant’s Handbook Management and Storage of Surface Waters (A H), incorporated by reference in rule 40C-4[.]091, FAC[J
9[.] Rule 40C-4[.]041(2)(b)8, FAC, requires that a permit be obtained “prior to the construction [or] operation of a surface water management system which is wholly or partially located in, on, or over any wetland[.]”
10[.] The term “construction is defined in rule 40C-4[.]021(7), FAC, to mean “any activity including land clearing [or] earth moving which will result in the creation of a system[.]” The term “operation” means “to cause or to allow a system to function[.]” Rule 20(11), A H[J
11[.] Rule 40C-4[.]021(27), FAC, defines “surface water management system” or “systems” to include areas of dredging or filling in wetlands[.]
12[.] Respondents’ activities described in paragraphs 4 and 5 constitute the construction and operation of a surface water management system and are prohibited unless authorized by a permit issued by the District[.] Therefore, the Respondents’ activities described in paragraphs 4 and 5 constitute a violation of Part IV of Chapter 373, FS, and Chapter 40C-4, FAC, in that the Respondents did not obtain a permit from the District prior to undertaking the construction or operation^] Sections 373[.]413(1), 373[.]416(1), 373[.]430(l)(b), FS, and rules 40C-4[.]041(1) and (2), FAC[J
The Molicas requested an evidentiary hearing and an administrative law judge entered a notice of hearing, describing the issue to be heard as follows:
ISSUE Whether Respondents should take certain corrective actions for allegedly dredging and filling property in Brevard County, Florida, without a permit, as alleged in the Administrative Complaint and Proposed Order issued on August 8, 2008[.]
The Molicas thereafter filed a complaint in the circuit court seeking declaratory judgment with respect to their rights under Chapter 373, Part IV, Florida Statutes and sought a temporary injunction with respect to the administrative action. After several amendments by the Molicas, the case proceeded on their second amended complaint. There, they presented the issues in dispute as follows:

Issues in Dispute

7[.] Plaintiffs intend, and seek to, utilize the FARM in furtherance of their aforesaid agricultural activities, and said activities include, or may include, without restriction as to location on the property, the building of access roads, reservoirs or cisterns, the building of contours for watering, the changing of the topography of the land, and the planting of palms trees and other vegetation in various locations, all contained within the FARM[.] Defendant has informed Plaintiffs that their farming activities are restricted, and it is Defendant’s contention(s) variously, and they have so stated to Plaintiffs, that Plaintiffs’ property is a “stormwater management system”, or is a “works”, or is not *768 following agricultural practices, or contains a “wetland”, which can change in location or new ones develop over time, and therefore Plaintiffs must apply for, obtain, and pay for, a permit before they can continue with and do the aforementioned activities on the FARM[.] It is Plaintiffs’ belief that they are not required to obtain a permit for those activities on their FARM because it is not within the permitting ambit of Chapter 373, Part IV, FS [.] Plaintiffs also dispute Defendant’s communication to Plaintiffs that once a permit is issued to Plaintiffs, they must allow Defendant to inspect their FARM upon Defendant’s demand to do so, or be subject to a civil or administrative action being brought against them[.] It is Plaintiffs’ belief that Defendant has no authority to cause or require Plaintiffs to submit their privately owned FARM to inspections by Defendant under Chapter 373 Part IV FS[.]
The trial court heard the Molicas’ motion for summary judgment in which they contended that the District lacked authority under the color of Chapter 373, Part IV, Florida Statutes, over their property and could not require them to obtain a permit for clearing, dredging or filling. Specifically, the Molicas contended: “The Defendant’s attempt to exercise permitting authority over Plaintiffs’ property is beyond that which is specifically contained in the statutes and is an impermissible attempt to enlarge the scope of its statutory regulatory authority....” The Molicas asserted: “Plaintiffs ... do not believe that the existence or non existence of a ‘wetland’ or the farming thereon, is the determinative material fact as to the rights of the parties.” The Molicas referenced sections 373.403, 373.406, 373.413, and 373.416, Florida Statutes, and stated:
7[.] The uncontroverted facts show that Plaintiffs’ property does not contain a stormwater management system, dam, impoundment, reservoir, appurtenant work or works, it does not contain any drainage ditches, canals, conduits, channels, culverts, pipes, pumps, open wells, nor any other artificial structure upon it[.] Furthermore, even if a system for water management was present on the property, which there is not, Plaintiffs’ property, would be exempt pursuant to ... the exemptions provided in Section 373[.]406, FS [.]
Two affidavits were filed in support of the motion for summary judgment. In one of the affidavits, Richard Kern, a civil engineer, stated that the Molicas’ “property d[id] not contain a stormwater management system, dam, impoundment, reservoir, appurtenant works, or works as those terms are defined in Section 373[.]403, Florida Statutes, and as those words are commonly used and understood to mean in civil engineering” and that “from a civil engineering standpoint th[e] property, having no artificial structures that extend beyond its boundaries, and using no ground water, is a closed system.” In the other affidavit, Brooks Humphrys, an individual, working in the field of agriculture who designed and managed irrigation and stormwater systems, stated:
7[.] That before the Plaintiffs purchased this property, and since that time, it has contained no stormwater management system, dam, impoundment, reservoir, appurtenant work or works, as those' terms are commonly used and understood to mean in the agricultural industry and as those terms are defined in Section 373[.]403, Florida Statutes ....
8[.] That this property does not contain any artificial structures such as ditches, canals, conduits, channels, culverts, wells or pumps which drain water off of or *769 onto it[.] There are no improvements on this property except for a utility power pole[.] All of Plaintiffs’ farm equipment, including a tractor and implements are kept on this property[.]
9[.] That except for rainfall, there is no water usage or consumption at all with respect to Plaintiffs’ farming activities on this property!.]
10[.] That based upon Affiant’s education, job experience, and observations on this property, it is his opinion and belief that there is no “works” or “system” at all on this property!.] However, if the property is considered to contain a “system” of some sort, that system would fall within the meaning of and be a closed system!.]
The District filed a response to the Moli-cas’ motion for summary judgment, in which it argued in part that it had authority to regulate wetland filling under Chapter 378, Part IV, Florida Statutes, that there existed a dispute of material fact with respect to wetland filling on the Moli-cas’ property, and that it would be improper to grant a declaration on summary judgment that the District did not have regulatory authority with respect to the Molicas’ property. In support of its argument, the District asserted:
Even if Plaintiffs were allowed by this Court to re-litigate their past wetland filling in this proceeding, summary judgment related to the past filling of wetlands must be denied because wetland filling is clearly within the regulatory jurisdiction of [the] [District] under Part IV of Chapter 373[.] By definition, “[t]he terms ‘surface water management system’ or ‘system’ include areas of dredging or filling, as those terms are defined in subsections 373[.]403(13) and 373[.]403(14), FS[J” [Rule] 40C-4[.]021(27), FAC. Thus, the placing of fill in a wetland is the construction of a “surface water management system," and activity that requires a permit under rule UOC-lp[]0⅛1 of the Florida Administrative Code[.] That rule states, in pertinent part
(b) An individual, standard, or general permit is required prior to the construction, alteration, operation, maintenance, abandonment or removal of a surface water management system which
8 Is wholly or partially located in, on, or over any wetland or other surface water, excluding the following activities
Rule 40C-4[.]041(2)(b) of the Florida Administrative Code
(Emphasis added). (Footnotes omitted).
The District filed four affidavits, including the affidavit of Mark Crosby and of Lance David Hart. Mark Crosby, a District engineer, stated in his affidavit:
5. During my inspection of the property on those two days, I did not observe anything that would qualify as a “closed system” as that term is used in Chapter 373 of the Florida Statutes and in the District’s rules.
6. During rainfall events, once the ground is saturated, rainfall runoff is not retained on the Molica property, but instead will flow off of the property and be discharged onto property of others.
Lance David Hart, a District employee whose “primary job duty at the District involve[d] determining the presence and extent of wetlands on real property,” stated in his affidavit that it was his “opinion that fill material ha[d] been placed in wetlands on the Molica property.”
After a hearing, the trial court granted the Molicas’ motion and entered a final declaratory judgment in favor of the Moli-cas. In the final declaratory judgment, the trial court said:
*770 1[.] That Plaintiffs own the property located at 2050 N Tropical Tr[ai]l, Merritt Island, Brevard County, Florida, which consists of approximately three and one half acres, which is legally described as....
2[.] That the Plaintiffs’ property has always been zoned for agricultural use and used for agricultural purposes and no other purpose since at least the 1950’s[.] The Plaintiffs purchased the property in 1990 and have used the property only for agricultural and silvi-culture purposes which include a citrus grove and more recently palm production, and, Plaintiffs have been engaged in those occupations on that land since its purchase by them[.]
3[.] That since the Plaintiffsf] ownership of this property beginning in 1990, it has contained no stormwater management system, dam, impoundment, reservoir, appurtenant works or works, as those terms are commonly used and understood to mean in the agricultural industry and from a civil engineering standpoint, and as defined in Chapter 373, Part IV, Florida Statutes [.]
4[.] That Plaintiffs’ said property contains no pumps, open wells or artificial structures such as ditches, canals, conduits, channels, or culverts which drain water off of or onto it, it uses rainwater only[J
5[.] If a system exists at all on this property, it would meet the criteria of a closed system as provided for in section 373[.]406(3), Florida Statutes, which is an exemption from the provisions of Chapter 373, Part IV, Florida Statutes[.] 6[.] There is no record evidence that establishes that the subject property contains a system or structure which would require the Plaintiffs to obtain a permit within the meaning and purview of Chapter 373, Part IV, Florida Statutes, or ever has since its ownership by Plaintiffs[.]
IT IS THEREUPON ADJUDGED AND DECREED AS FOLLOWS
A[.] The Defendant lacks authority to take administrative action under Chapter 373, Part IV, Florida Statutes, with respect to the Plaintiffs’ use of this land since the beginning of their ownership to the date of this Order and a Final Judgment rendered pursuant hereto,
B[.] Because of the foregoing findings, the remaining issue with respect to the agricultural use exemption found in section 373[.]406(2), Florida Statutes, is moot, and,
C[.] Jurisdiction is reserved as to attorney’s fees and costs[.]
The District contends that the Molicas were not entitled to summary judgment because (1) it is uncontroverted on the record that wetlands were filled on the Molicas’ property and (2) the filling of the wetlands constituted the construction of a surface water management system that required a permit. The basic issue presented is whether the District exceeded its statutorily delegated authority under Chapter 373, Part IV, Florida Statutes by creating an administrative rule that requires a permit in order to fill a wetland.[2]
*771 The rule at issue is Rule 40C-4.041 of the Florida Administrative Code, which provides in part:
(1) Unless expressly exempt, an individual or general environmental resource permit must be obtained from the District under Chapter 40C-4, 40C^10, 40C-42, 40C^4 or 40C-400, F.A.C., pri- or to the construction, alteration, operation, maintenance, abandonment or removal of any stormwater management system, dam, impoundment, reservoir, appurtenant work or works, including dredging or filling, and for the maintenance and operation of existing agricultural surface water management systems or the construction of new agricultural surface water management systems.
(2) The District issues four types of environmental resource permits: conceptual approval permits, individual permits, standard permits, and general permits.
[[Image here]]
(b) An individual, standard, or general permit is required prior to the construction, alteration, operation, maintenance, abandonment or removal of a surface water management system which:
[[Image here]]
8. Is wholly or partially located in, on, or over any wetland or other surface water, excluding the following activities:
a. Filling any ditch that was constructed in uplands and which provides drainage or water conveyance only for areas owned or controlled by the person performing the filling; or
b. Construction and alteration of outfall pipes less than 20 feet in length in wetlands or other surface waters, and associated headwalls, erosion control devices, and energy dissipation structures.
(Emphasis added). Rule 40C-4.041 thus requires a party to obtain a permit for the construction, alteration, operation, maintenance, abandonment, or removal of a surface water management system if the system is wholly or partially located in, on, or over a wetland, and the activity does not fall under the filling of a ditch exception and/or the construction/alteration of outfall pipes exception.
Rule 400^4.021(27) of the Florida Administrative Code defines the term “surface water management system” as follows:
“Surface water management system” or “system” means a stormwater management system, dam, impoundment, reservoir, appurtenant work, or works, or any combination thereof. The terms “surface water management system” or “system” include areas of dredging or filling, as those terms are defined in subsections 378.403(13) and 373.403(14), F.S.
Under rule 40C-4.021(27), a surface water management system includes areas of filling as defined in section 373.403(14), Florida Statutes. Section 373.403(14), Florida Statutes, defines the term “filling” as follows: “ ‘[Falling’ means the deposition, by any means, of materials in surface waters or wetlands.... ” The Molieas’ contention is that there is no statutory authority for the District to regulate the draining and filling of wetlands through the promulgation of rule 40C-4.041.
Chapter 373, Part IV, Florida Statutes addresses the management and storage of surface waters. Section 373.413, Florida Statutes, entitled “Permits for construction or alteration,” provides in part:
(1) Except for the exemptions set forth herein, the governing board or the department may require such permits and impose such reasonable conditions as are necessary to assure that the construction or alteration of any stormwa-ter management system, dam, impound *772 ment, reservoir, appurtenant work, or works will comply with the provisions of this part and applicable rules promulgated thereto and will not be harmful to the water resources of the district. The department or the governing board may delineate areas within the district wherein permits may be required.
Similarly, section 373.416, Florida Statutes, entitled “Permits for maintenance or operation,” provides in part:
(1) Except for the exemptions set forth in this part, the governing board or department may require such permits and impose such reasonable conditions as are necessary to assure that the operation or maintenance of any stormwater management system, dam, impoundment, reservoir, appurtenant work, or works will comply with the provisions of this part and applicable rules promulgated thereto, will not be inconsistent with the overall objectives of the district, and will not be harmful to the water resources of the district.
Therefore, pursuant to sections 373.413(1) and 373.416(1), the governing board (the District) may require that a party obtain a permit for the construction, alteration, maintenance, or operation of a stormwater management system, dam, impoundment, reservoir, appurtenant work, or works. The Molicas contend that sections 373.413(1) and 373.416(1) are the only authority within chapter 373, Part IV, for the District to require a permit and that, because dredging and filling is neither the construction, alteration, maintenance or operation of any of the six statutorily referenced items: (1) stormwater, management system, (2) dam, (3) impoundment, (4) reservoir, (5) appurtenant work or (6) works,[3] the District lacks the power to require a permit for dredge and/or fill.
*773 In its motion to dismiss the Molicas’ second amended complaint, the District asserted, in part, that:
Section 373[.]403(5), Florida Statutes, defines the term “works” to mean all artificial structures and other construction that is placed in or across the waters in the state[.]” Section 373[.]019(20), Florida Statutes, defines the term “water” or “waters of the state” to mean “any and all water on or beneath the surface of the ground including natural or artificial watercourses, lakes, ponds, diffused surface water[.]” Section 373[.]019(19), Florida Statutes, defines the term “surface water” to mean “water upon the surface of the earth, whether contained in bounds or diffused[.]” Section 373[.]019(22), Florida Statutes, defines the term “wetlands” to mean “those areas that are inundated or saturated by surface water or groundwater at a frequency and a duration sufficient to support, and or under normal circumstances do support, a prevalence of vegetation typically adopted for life in saturated soils[.]” The long and short of these provisions of the Florida Statutes is that construction in wetlands is regulated by section 373[.]413, Florida Statutes, because wetlands are waters of the state and a “work” is construction in “waters of the state[.]”
Additionally, the District claims the authority, under section 373.414, Florida Statutes, entitled “Additional criteria for activities in surface waters and wetlands,” to require permitting for dredge or fill of wetlands:
(1) As part of an applicant’s demonstration that an activity regulated under this part will not be harmful to the water resources or will not be inconsistent with the overall objectives of the district, the governing board or the department shall require the applicant to provide reasonable assurance that state water quality standards applicable to waters as defined in s. 403.031(13) will not be violated and reasonable assurance that such activity in, on, or over surface waters or wetlands, as delineated in s. 373.421(1), is not contrary to the public interest. However, if such an activity significantly degrades or is within an Outstanding Florida Water, as provided by department rule, the applicant must provide reasonable assurance that the proposed activity will be clearly in the public interest.
[[Image here]]
(3) It is the intent of the Legislature to provide for the use of certain wetlands as a natural means of stormwater management and to incorporate these waters into comprehensive stormwater management when such use is compatible with the ecological characteristics of such waters and with sound resource management. To accomplish this, the governing board or the department is authorized to establish by rule performance standards for the issuance of permits for the use of certain wetlands for stormwater management. The compliance with such standards creates a presumption that the discharge from the stormwater management system meets state water quality standards.
[[Image here]]
(7) This section shall not be construed to diminish the jurisdiction or authority granted prior to the effective date of this *774 act to the water management districts or the department pursuant to this part, including their jurisdiction and authority-over isolated wetlands. The provisions of this section shall be deemed supplemental to the existing jurisdiction and authority under this part.
[[Image here]]
(9)The department and the governing boards, on or before July 1, 1994, shall adopt rules to incorporate the provisions of this section, relying primarily on the existing rules of the department and the water management districts, into the rules governing the management and storage of surface waters. Such rules shall seek to achieve a statewide, coordinated and consistent permitting approach to activities regulated under this part. Variations in permitting criteria in the rules of individual water management districts or the department shall only be provided to address differing physical or natural characteristics. Such rules adopted pursuant to this subsection shall include the special criteria adopted pursuant to s. 403.061(29) and may include the special criteria adopted pursuant to s. 403.061(34). Such rules shall include a provision requiring that a notice of intent to deny or a permit denial based upon this section shall contain an explanation of the reasons for such denial and an explanation, in general terms, of what changes, if any, are necessary to address such reasons for denial. Such rules may establish exemptions and general permits, if such exemptions and general permits do not allow significant adverse impacts to occur individually or cumulatively. Such rules may require submission of proof of financial responsibility which may include the posting of a bond or other form of surety prior to the commencement of construction to provide reasonable assurance that any activity permitted pursuant to this section, including any mitigation for such permitted activity, will be completed in accordance with the terms and conditions of the permit once the construction is commenced. Until rules adopted pursuant to this subsection become effective, existing rules adopted under this part and rules adopted pursuant to the authority of ss. 403.91-403.929 shall be deemed authorized under this part and shall remain in full force and effect. Neither the department nor the governing boards are limited or prohibited from amending any such rules.
(10) The department in consultation with the water management districts by rule shall establish water quality criteria for wetlands, which criteria give appropriate recognition to the water quality of such wetlands in their natural state.
(11)(a) In addition to the statutory exemptions applicable to this part, dredging and filling permitted under rules adopted pursuant to ss. 403.91-403.929, 1984 Supplement to the Florida Statutes 1983, as amended, or exempted from regulation under such rules, shall be exempt from the rules adopted pursuant to subsection (9) if the dredging and filling activity did not require a permit under rules adopted pursuant to this part prior to the effective date of the rules adopted pursuant to subsection (9). The exemption from the rules adopted pursuant to subsection (9) shall extend to:
1. The activities approved by said chapter 403 permit for the term of the permit; or
2. Dredging and filling exempted from regulation under rules adopted pursuant to ss. 403.91-403.929, 1984 Supplement to the Florida Statutes 1983, as amended, which is commenced prior to the effective date of the rules adopted pur *775 suant to subsection (9), is completed within 5 years after the effective date of such rules, and regarding which, at all times during construction, the terms of the dredge and fill exemption continue to be met.
(b) This exemption shall also apply to any modification of such permit which does not constitute a substantial modification. For the purposes of this paragraph, a substantial modification is one which is reasonably expected to lead to substantially different environmental impacts. This exemption shall also apply to a modification which lessens the environmental impact. A modification qualifying for this exemption shall be reviewed under the rules adopted pursuant to ss. 403.91-403.929, 1984 Supplement to the Florida Statutes 1983, as amended, in existence prior to the effective date of the rules adopted under subsection (9).
Under the terms of section 373.414, Florida Statutes, the governing board (the District) is authorized to require a permit applicant to provide reasonable assurances that the activity regulated under Chapter 373, Part IV, for which the permit is sought is not contrary to the public interest if the activity will occur in, on, or over surface waters or wetlands and must adopt rules to satisfy the provisions of the section. Furthermore, the dredging and filling activity that was previously addressed in Chapter 403, Part VIII, Florida Statutes, is now covered in Chapter 373, Part IV.[4]
The Legislature’s transfer of wetlands protection to Chapter 373 and the consolidation of multiple permits, including dredge and fill permits, into a single “environmental resource permit” was apparently designed to be “extremely broad” in scope and to “ ‘capture virtually every type of artificial or natural structure or construction that can be used to connect to, draw water from, drain water into, or be placed across surface water [including] all structures and constructions that can have an effect on surface waters.’ ” Mary Jane Angelo, Charles Lobdell & Tara Boonstra, Exalting the Corporate Form Over Environmental Protection the Corporate Shell Game and the Enforcement of Water Management Law in Florida, 17 J. Land Use & Envtl. L. 89, 94-95 (Fall 2001). (Footnotes omitted).
Contrary to the trial court’s conclusion that the Molicas were entitled to a declaratory judgment that the District lacked au *776 thority to take administrative action under Chapter 378, Part IV, with respect to the Molieas’ property, the Legislature did intend to give, and has given, the District the authority under Chapter 373, Part IV, to regulate dredging and filling of wetlands. To that extent, rule 40C-4.041 is not invalid. Whether that power was properly exercised in the case of the Moli-cas’ property, including whether the property qualified as an “exempt closed system” under section 373.406(3), Florida Statutes, are issues for the administrative proceeding.
REVERSED and REMANDED.
COHEN and JACOBUS, JJ., concur.

. The District likely intended to reference section 373.414, Florida Statutes.

. This issue should have been decided in a proceeding brought under section 120.56, Florida Statutes (2008), but the claim arguably qualifies for judicial relief pursuant to the narrow exception for actions taken without colorable statutory authority, and the issue was not raised by the District below. See State, Dep't of Revenue v. Brock, 576 So.2d 848 (Fla. 1st DCA 1991). Compare Wexler v. Lepore, 878 So.2d 1276 (Fla. 4th DCA 2004). See also Samoff v. Fla. Dep’t of Highway Safety & Motor Vehicles, 825 So.2d 351, 355 (Fla.2002). At most, however, the court’s scope of review is limited to the question of lack of colorable authority for the District to promulgate the rule at issue.

. Section 373.403, Florida Statutes provides definitions for terms, providing in pertinent part:
(1) "Dam” means any artificial or natural barrier, with appurtenant works, raised to obstruct or impound, or which does obstruct or impound, any of the surface waters of the state.
(2) "Appurtenant works” means any artificial improvements to a dam which might affect the safety of such dam or, when employed, might affect the holding capacity of such dam or of the reservoir or impoundment created by such dam.
(3) "Impoundment” means any lake, reservoir, pond, or other containment of surface water occupying a bed or depression in the earth’s surface and having a discernible shoreline.
(4) "Reservoir” means any artificial or natural holding area which contains or will contain the water impounded by a dam.
(5) "Works” means all artificial structures, including, but not limited to, ditches, canals, conduits, channels, culverts, pipes, and other construction that connects to, draws water from, drains water into, or is placed in or across the waters in the state.
(6)"Closed system” means any reservoir or works located entirely within agricultural lands owned or controlled by the user and which requires water only for the filling, replenishing, and maintaining the water level thereof.
[[Image here]]
(8) “Maintenance” or "repairs” means remedial work of a nature as may affect the safety of any dam, impoundment, reservoir, or appurtenant work or works, but excludes routine custodial maintenance.
[[Image here]]
(10) "Stormwater management system” means a system which is designed and constructed or implemented to control discharges which are necessitated by rainfall events, incorporating methods to collect, convey, store, absorb, inhibit, treat, use, or reuse water to prevent or reduce flooding, overdrainage, environmental degradation, and water pollution or otherwise affect the quantity and quality of discharges from the system.
[[Image here]]
(13) “Dredging” means excavation, by any means, in surface waters or wetlands, as delineated in s. 373.421(1). It also means the excavation, or creation, of a water body *773 which is, or is to be, connected to surface waters or wetlands, as delineated in s. 373.421(1), directly or via an excavated water body or series of water bodies.
(14) "Filling” means the deposition, by any means, of materials in surface waters or wetlands, as delineated in s. 373.421(1).

. The legislature said that its intent was "to transfer the protection of wetlands and the permitting of wetlands impacts encompassed by the Warren S. Henderson Wetlands Protection Act of 1984 to chapter 373, Florida Statutes." Ch. 93-213, § 19, at 2137, Laws of Fla. Specifically, the legislature provided:
It is the intent of the Legislature to transfer the protection of wetlands and the permitting of wetlands impacts encompassed by the Warren S. Henderson Wetlands Protection Act of 1984 to chapter 373, Florida Statutes. It is the further intent of the Legislature that the Department of Environmental Regulation and the water management districts shall consolidate all permits for activities involving dredging and filling, management and storage of surface waters including stormwater control, and the alteration of mangroves into a single type of permit, which shall be known as an "environmental resource permit.”
Ch. 93-213, § 19, at 2137, Laws of Fla.; see Bruce Wiener & David Dagon, Wetlands Regulation and Mitigation After the Florida Environmental Reorganization Act of 1993, 8 J. Land Use & Envtl. L. 521, 528-53 (Summer 1993) (providing a useful history of Florida's regulation of activities in wetlands and explaining that “[t]he Reorganization Act consolidate[d] dredge and fill permits, management and storage of surface water permits, and permits for the alteration of mangroves into a single ‘environmental resource permit' ”).