ROTHENBERG, J.
 

 The defendant, Sacred Family Investments, Inc. (“Landlord”), appeals from a non-final order temporarily enjoining it from continuing construction on a two-story bank building and ordering it to return the construction site to usable parking spaces. We affirm in part, reverse in part, and remand for entry of an order consistent with this opinion.
 

 Facts and Procedural History
 

 The plaintiff, Doral Supermarkets, Inc. (“Tenant”), operates a Sedano’s Supermarket in a shopping center owned by Landlord. Section 5 of the parties’ lease, which can potentially continue through 2042, provides in part as follows: “No other building may be built on parking area without Tenant’s written consent.” Without obtaining Tenant’s written consent, Landlord cordoned off approximately 12,000 square feet of the parking lot directly across from the supermarket and began to construct a two-story bank building, resulting in a loss of approximately forty parking spaces.
 

 After Tenant saw rebar protruding from the construction site, which was approximately two months after the parking area had been cordoned off, Daniel F. Valdes of Sedano’s Management, Inc., sent a letter to Landlord on July 81, 2008, advising it of the lease provision, requesting information about the construction, and expressing concern as to the availability of parking. On August 18, 2008, Tenant’s counsel delivered a letter to Cologero Alaimo, Landlord’s president, informing him that the construction of the building violates the lease agreement and adversely affects parking and visibility. Although Landlord was in receipt of Tenant’s letters, Landlord did not halt construction due to its commitments with contractors and the bank.
 

 On August 28, 2008, Tenant filed a petition seeking a permanent injunction, to enjoin Landlord from continuing construction and to order Landlord to convert the cordoned off area back into the previously provided parking spaces. Landlord answered the petition and asserted affirmative defenses, including waiver and equitable estoppel. Thereafter, Tenant filed a motion seeking a temporary and a permanent injunction. Landlord opposed the motion, and moved for a declaration that Tenant unreasonably withheld consent. Landlord argued that a year prior to breaking ground on the construction project, Tenant was on notice of the construction project; repeatedly expressed its oral approval and consent; and waited two months after construction commenced to voice its objection.
 

 After conducting an evidentiary hearing, the trial court found that the relevant lease provision is clear and unambiguous; Landlord breached the provision by failing to obtain written consent from Tenant; Tenant ascertained Landlord’s intent to construct the bank building at the end of
 
 *415
 
 July 2008; and although Tenant asked Landlord to stop construction by late August 2008, Landlord refused to halt the construction. Thus, the trial court concluded that Landlord “is not entitled to greater equity as a result of [its] decision to move forward with the construction” and entered an order enjoining Landlord from continuing construction of the bank building; ordering Landlord to return the construction site into usable parking spaces, but staying this provision pending appellate review; and ordering Tenant to post a $150,000 bond. Landlord’s non-final appeal followed.
 

 Issues and Analysis
 

 A. The Temporary Injunction Enjoining Constmction
 

 “A trial court is afforded broad discretion in granting, denying, dissolving or modifying injunctions, and unless a clear abuse of discretion is demonsti-ated, an appellate court must not disturb the trial court’s decision.”
 
 Carricarte v. Carricarte,
 
 961 So.2d 1019, 1020 (Fla. 3d DCA 2007) (quoting
 
 Jackson v. Echols,
 
 937 So.2d 1247, 1249 (Fla. 3d DCA 2006));
 
 see also Cohen Fin., LP v. KMC/EC II, LLC,
 
 967 So.2d 224, 226 (Fla. 3d DCA 2007) (“In reviewing a trial court’s ruling on a request for a temporary injunction, we must affirm unless the appellant establishes that the trial court committed a clear abuse of discretion.”). A party seeking a temporary injunction must establish that: (1) irreparable harm will result if the temporary injunction is not entered; (2) an adequate remedy at law is unavailable; (3) there is a substantial likelihood of success on the merits; and (4) entry of the temporary injunction will serve the public interest.
 
 See Foreclosure FreeSearch, Inc. v. Sullivan,
 
 12 So.3d 771, 775 (Fla. 4th DCA 2009);
 
 Lennar Homes, L.L.C. v. Ventures, LLC,
 
 988 So.2d 660, 663 (Fla. 3d DCA 2008);
 
 Bay N Gulf, Inc. v. Anchor Seafood, Inc.,
 
 971 So.2d 842, 843 (Fla. 3d DCA 2007).
 

 Landlord contends that the trial court abused its discretion by entering the temporary injunction because Tenant failed to establish a substantial likelihood of success on the merits. Specifically, Landlord argues that there was insufficient evidence presented to support the trial court’s findings regarding his defenses of waiver and equitable estoppel.
 
 See, e.g., Bradley v. Health Coal, Inc.,
 
 687 So.2d 329, 333 (Fla. 3d DCA 1997) (providing that at a hearing on a motion for temporary injunction, the defending party may offer defenses to establish that the moving party does not have a substantial likelihood of success on the merits). We disagree.
 

 Waiver is “the voluntary and intentional relinquishment of a known right.”
 
 Clear Channel Metroplex, Inc. v. Sunbeam Television Corp.,
 
 922 So.2d 229, 232 (Fla. 3d DCA 2005);
 
 see also Kirschner v. Baldwin,
 
 988 So.2d 1138, 1142 (Fla. 5th DCA 2008) (“ Waiver’ is the voluntary and intentional relinquishment of a known right or conduct which infers the relinquishment of a known right. When a waiver is implied, the acts, conduct or circumstances relied upon to show waiver must make out a clear case.”) (citation omitted).
 

 Landlord bases its waiver argument on its claim that Tenant had notice of the construction project at least two months prior to voicing its objection. This claim is based on the following events: an amended site plan filed with the City of Doral; a public hearing regarding the site plan; the City of Doral’s approval of the construction project in December 2007; the blocking off of the construction site in late May 2008; and the commencement of construe
 
 *416
 
 tion in early June 2008.
 
 [1]
 
 Thus, Landlord contends that the trial court’s finding— that Tenant learned of Landlord’s intent to construct the building by late July 2008— is not supported by the evidence. We disagree.
 

 Tenant testified that it did not have knowledge of the amended site plan, the public hearing, or the City of Doral’s approval of the construction project, and the record does not reflect that Tenant was provided with notice of these events. Shortly after seeing the area cordoned off, Tenant inquired, although not with Landlord, and was told that the area was undergoing drainage work. At that point, Tenant did not realize that the drainage work was being completed in preparation of the construction project. Additionally, the letter dated July 31, 2008, in which Tenant advised Landlord of the lease provision and requested information about the construction project, supports the trial court’s finding that Tenant did not discover the construction project until late July 2008. Because the trial court’s findings of fact as to when Tenant discovered that a bank building would be constructed on the area previously reserved for parking is supported by the evidence, we conclude that the trial court did not abuse its discretion by finding that Tenant had a substantial likelihood of success on the merits as to Landlord’s defense of waiver.
 

 We, likewise, conclude that Tenant also established that it had a substantial likelihood of success on the merits as to Landlord’s equitable estoppel defense. “Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position.”
 
 Major League Baseball v. Morsani,
 
 790 So.2d 1071, 1076 (Fla.2001). The doctrine of equitable estoppel, however, “should be applied with great caution and is applied only where to refuse its application would be virtually to sanction a fraud.”
 
 Pelican Island Prop. Owners Ass’n v. Murphy,
 
 554 So.2d 1179, 1181 (Fla. 2d DCA 1989).
 

 Landlord argued that Tenant should be equitably estopped from enforcing the lease provision based on the parties’ “course of dealing,” and premised its argument on Tenant’s failure to object when Landlord rented out that same area, without objection, to Christmas tree and flower vendors and to Goodwill for the placement of a collection trailer. We find no abuse of discretion in the trial court’s rejection of this argument.
 

 The parties’ contract provides that Landlord must obtain Tenant’s written consent for the construction of a building — not for the temporary placement of non-permanent structures such as a tent or trailer. Thus, Landlord cannot legitimately argue that Tenant lulled Landlord into believing that it did not have to obtain Tenant’s written consent for the construction of a permanent structure — the bank building — based on Tenant’s failure to object to the Goodwill trailer or temporary vendors. Additionally, the evidence presented at the hearing demonstrates that during the parties’ “course of dealing,” Tenant has consistently protected its rights under the lease regarding parking spaces. Thus, based on the evidence presented, the trial court did not abuse its discretion by finding that Tenant met its burden of establishing a likelihood of success on the merits as to Landlord’s defense of equitable estoppel.
 

 
 *417
 
 Landlord further contends that Tenant failed to demonstrate that entry of the temporary injunction will serve the public interest. The record, however, reflects that the trial court correctly weighed Tenant’s interest in enforcing and protecting its rights under the lease agreement against Landlord’s interest in completing construction of the bank building. In granting the temporary injunction, the trial court concluded that the public policy considerations and the balance of equities favored the entry of a temporary injunction because: (1) Landlord failed to obtain Tenant’s written consent as required under the clear and unambiguous lease provision; (2) the evidence established that the bank building would adversely affect parking and visibility; (3) despite Tenant putting Landlord on notice that it objected to the construction, Landlord refused to halt construction after Tenant objected to the construction; and (4) Tenant has thirty-three years remaining on the lease. This finding was well within the trial court’s discretion.
 

 B. Ordering Landlord to Return the Construction Site to its Original State
 

 Lastly, Landlord contends that the trial court abused its discretion by requiring it to return the construction site to its original state by converting the site back into parking spaces. As Tenant properly concedes, the purpose of a temporary injunction is to preserve the status quo pending the final hearing, and requiring Landlord to return the construction site to usable parking spaces goes beyond preserving the status quo. Based upon Tenant’s proper confession of error, we find that the trial court improperly granted the permanent relief sought by Tenant without affording Landlord a full hearing on the merits.
 

 Conclusion
 

 In conclusion, we affirm the portion of the order enjoining Landlord from permitting further construction of the bank building, but reverse the portion of the order requiring Landlord to return the construction site to its original state.
 

 Affirmed in part, reversed in part, and remanded for entry of an order consistent with this opinion.
 

 [1]
 

 . Landlord also claimed that Tenant had actual notice of the construction project in dispute, which Tenant adamantly disputes.