SALTER, J.
Miami-Dade County appeals a temporary injunction prohibiting the County from enforcing a notice of violation and orders for corrective action issued by the County’s Environmental Services unit, and *335 from attempting to seek access to the ap-pellees’ commercial facility without their consent or a circuit court order. We vacate the order and injunction.[1]
I. Fifteen Years of Litigation
The corporate appellee, Concrete Structures, Inc. (“CSI”), owns and operates a concrete casting facility located within the County’s Northwest Wellfield protection area. The individual appellee, Richard Sa-lonia, is the President of CSI. The Northwest Wellfield is protected by County environmental ordinances that include the “Potable Water Supply Well Protection Ordinance,” section 24-43, Miami-Dade County Code. That ordinance was enacted “to safeguard the public health, safety and welfare by providing scientifically established standards” for land uses in the area, “protecting public potable water supply wells from contamination.” Miami-Dade, Fla., Code § 24-43(1) (2008). CSI’s property and operations are also subject to the County’s zoning ordinances and permit requirements in Chapter 33, Miami-Dade County Code.
In 1998, the County commenced the underlying circuit court action, alleging that CSI and Mr. Salonia were in violation of the Northwest Wellfield protection ordinances and applicable zoning provisions. In 2000, the circuit court entered an injunction directing CSI to “immediately cease all concrete pouring operations at the site,” and to “remove or render free of pollutants all forms, concrete products and equipment at the site” within twenty days. CSI was also granted ninety days to obtain a permit to place clean fill in a protected freshwater wetland or (failing that) thirty days , within which to remove previously-deposited fill.
In November 2005, the County, CSI, and Mr. Salonia entered into a detailed settlement agreement.[2] Days later, the circuit court approved the settlement and dismissed the underlying lawsuit with prejudice, retaining jurisdiction to enforce the settlement.
In June 2007, the County moved to enforce the settlement agreement, alleging that CSI had failed to legalize the uses of the property and failed to comply with provisions of the required fill permit. In May 2009, the County moved on an emergency basis for access to the CSI property. The County alleged that CSI had denied the County access to the property to inspect it during normal business hours and pursuant to the environmental permit issued to CSI. The County also alleged that CSI had begun lake excavation at the property without obtaining a required certificate of use or operating permit.
After an evidentiary hearing, the circuit court granted the County’s motion to enforce the settlement agreement and its motion for access to enter and inspect the property. The court directed CSI to pay the County “$500 per day starting from April 1, 2008 and continuing until the property is returned to the condition (in all *336 respects) it was in at the time the November 1, 2005, settlement agreement was entered.” The County maintained that the $500.00 per day penalty should have commenced from June 1, 2007, and it appealed the circuit court’s order for that reason. We affirmed the circuit court’s order. Miami-Dade Cnty. v. Concrete Structures, Inc., 36 So.3d 762 (Fla. 3d DCA 2010).
In October 2009, the County’s Department of Environmental Resources Management (DERM) issued a “Notice of Violation and Orders for Corrective Action” to CSI. The notice reported that CSI had failed to complete work in accordance with the plans and specifications submitted to obtain its permit; that construction prohibited in protected wetlands had occurred; and that groundwater contaminant and pH levels exceeded permitted levels. In an administrative consent agreement signed by CSI in June 2010, CSI agreed to submit additional progress reports and other documentation to demonstrate zoning resolution and environmental permit compliance, failing which CSI would cease and desist the unauthorized uses, remove the related structures and personal property, remove unpermitted fill, and restore the impacted wetlands. Importantly, CSI agreed that “Entry of this Consent Agreement does not relieve [CSI] of their responsibility to comply with all applicable federal, state, or local laws, regulations and ordinances.”
But this fragile peace did not last long. In October 2011, DERM[3] issued another “Notice of Violation and Orders for Corrective Action” to CSI with a litany of items of alleged non-compliance with the administrative consent agreement. The following month, CSI and Mr: Salonia filed their verified motion for temporary injunction in the 1998 circuit court action, complaining that “on numerous occasions the County has attempted to conduct unannounced inspections at the property during normal business hours without seeking pri- or consent of CSI or a warrant from [the trial court].” CSI alleged that “the County’s continued attempts to inspect [CSI’s] property either without seeking consent or a proper warrant from this Court shows a blatant disregard for the constitutional protections provided by the United States Constitution to [CSI].”
After a hearing, the circuit court issued the temporary injunction sought by CSI, waived the bond required under Florida Rule of Civil Procedure 1.610(b), and precluded the County from (a) enforcing its administrative notice of violation and corrective order and (b) attempting to seek access to CSI’s facility without CSI’s consent or a further court order. This appeal followed.
II. Analysis
To obtain the temporary injunction, CSI was obligated to establish irreparable harm, the unavailability of an adequate remedy at law, a substantial likelihood of prevailing on the merits, and that the injunction would serve the public interest. Sacred Family Invs. v. Doral Supermarket, 20 So.3d 412, 415 (Fla. 3d DCA 2009). Not one of these requirements was satisfied.[4]
*337 A. Irreparable Harm
The County issued notices of violation and sought to exercise rights of inspection pursuant to the conditions of CSI’s environmental and land use permits. As detailed below, CSI did not establish the likelihood of any imminent, “arbitrary invasions by governmental officials” or constitutional violations.
B. Adequate Remedy at Law
The notices of violation complained of by CSI afforded CSI rights to an administrative appeal to the Environmental Quality Control Board. Miami-Dade, Fla., Code § 24-11 (2008). Any decision by that Board could have been further appealed to the appellate division of the circuit court under section 24-18 of the Code. CSI’s failure to exhaust these remedies precluded its action in the circuit court. Frye v. Miami-Dade Cnty., 2 So.3d 1063 (Fla. 3d DCA2009).
C. Likelihood of Prevailing on the Merits
The County’s position on the merits is easily summarized. CSI was required by law to obtain certain land use and environmental permits to operate in an area of critical environmental concern (above the Biscayne Aquifer, the primary source of the County’s potable water). When the County sued for CSI’s failure to obtain those permits and land use resolutions, CSI entered into a settlement agreement confirming its obligations, reimbursing the County for enforcement costs, and agreeing to comply within a time certain or to cease and desist the prohibited uses. When CSI failed to comply with its written obligations in the settlement agreement, the County sued to enforce the agreement and to collect the agreed per diem penalties. When CSI finally sought and obtained permits, those permits included written agreements to allow access to CSI’s property for inspection and testing “at reasonable times” by County environmental staff “presenting credentials.” CSI’s authorizations in the permit applications did not include any requirement for the County to give prior written notice of an inspection or test, to obtain CSI’s prior consent, or to first procure any type of warrant or court order. Finally, CSI failed to exhaust its administrative remedies regarding the administrative actions by DERM, such that the matter was not ripe for consideration by the trial court.
CSI’s arguments are more complex. First, CSI argues that the County violated the May 2009 circuit court order granting the County’s motion to enforce the 2005 settlement agreement. Second, CSI asserts that the County’s demands for access and inspection constituted an “unauthorized, warrantless search of [CSI’s] property” in violation of the Fourth Amendment to the United States Constitution. Third, CSI asserts that the Florida statutes pertaining to “inspection warrants,” sections 933.20-933.30, Florida Statutes (2011), limit the County’s rights of access and inspection specified in the permit terms. Fourth and finally, CSI maintains that it is not bound by prior inconsistent positions it has taken in the underlying lawsuit. We address and reject these arguments in order.
1. The May 2009 Enforcement Order
The May 2009 order granted the County’s 2007 motion to enforce the settlement agreement and the County’s 2009 emergency motion for access following CSI’s denial of access to County staff for inspection purposes. The order: concluded that CSI violated the 2005 settlement agree *338 ment; directed CSI to immediately cease unauthorized activity until the necessary permits and certificates were obtained and “all necessary governmental operating requirements have been met;” and imposed a daily fine upon CSI pending restoration of the property. The order granted the County one opportunity to enter and inspect the property, with additional inspections or access to be “by consent of [CSI] or through further Order of the Court.” CSI maintains that the “one opportunity” limitation applied not only to the 2009 violations, but also to any future access and inspections.
CSI’s argument fails to address the fact that the 2011 violations — the matters which prompted renewed County action and CSI’s motion for the temporary injunction prohibiting such action — involved (a) occurrences which followed the 2009 order and (b) administrative actions based on CSI’s consent to inspections and access under permits issued after the 2009 order. Based on the new 2011 violations, the County sought access to the property during reasonable business hours and upon presentation of proper credentials.[5] The 2011 notice of violation also followed the 2010 administrative consent agreement between CSI and the County whereby CSI agreed to cure matters identified in the 2009 notice of violation.
Neither the plain language of the May 2009 order nor logic supports CSI’s argument that the County limited itself to a single inspection for all time (absent CSI’s prior consent or a court order), regardless of subsequent occurrences or violations.
2. Fourth Amendment Issues
In the circuit court, CSI argued — and the court found — that the Fourth Amendment safeguards CSI’s privacy and security “against arbitrary invasions by governmental officials,” citing Camara v. Municipal Court of the City & County of San Francisco, 387 U.S. 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). Camara vacated the conviction of a tenant who refused building inspectors access to his personal residence. The Supreme Court held that the warrantless inspections of a residence in that case violated the Fourth Amendment’s protection to be free from unreasonable government invasions of privacy. A case decided with Camara, See v. City of Seattle, 387 U.S. 541, 87 S.Ct. 1741, 18 L.Ed.2d 930 (1967), reached the same result with respect to a fire inspector’s unannounced and warrantless inspection of a commercial warehouse. In See, however, the Supreme Court did not address “accepted regulatory techniques” such as licensing programs which require inspections prior to operating a business or marketing a product.
In the forty-plus years since Camara and See were decided, a comprehensive regulatory framework has evolved — federal, state, and local — to address environmental issues.[6] And twenty years after Camara and See, the Supreme Court sharpened the standards applicable to war-rantless inspections for “closely regulated” businesses. New York v. Burger, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), described a three-part assessment:
*339 First, there must be a “substantial” government interest that informs the regulatory scheme pursuant to which the inspection is made.
Second, the warrantless inspections must be “necessary to further [the] regulatory scheme.” ...
Finally, “the statute’s inspection program, in terms of the certainty and regularity of its application, [must] pro-vid[e] a constitutionally adequate substitute for a warrant.” In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers.
Id. 482 U.S. at 702-03, 107 S.Ct. 2636 (citations omitted).
Applying the three tests to this record, environmental concerns relating to water quality and protected wetlands are unquestionably a “substantial” governmental interest, and those concerns are the basis for the County’s regulatory and permitting scheme in this case. Second, the County’s inspections to assure that contaminants are within appropriate bounds, and that wetlands are not being filled without compliance with the permit terms and the applicable ordinance, are necessary to further the regulatory scheme. And third, the ordinances and permit applications (not to mention the preceding thirteen years of litigation and enforcement) fairly notified CSI that the access and inspections were pursuant to law and had a properly defined scope. CSI’s written agreements to provide access and inspections limited the discretion of the County inspectors to the activities and uses described in the permits.
Nor does the record reflect that the access and inspections attempted by the County amounted to a “raid”[7] or to any investigation by law enforcement officers. The DERM inspectors and code compliance officials sought only to test water and fill, and to inspect construction work in process in the protected wetlands area (during normal business hours, and after presenting credentials).
For all these reasons, we conclude that the warrantless access and inspections sought by the County[8] are not, as argued by CSI, “arbitrary invasions by governmental officials” in violation of the Fourth Amendment. We would reach the same conclusion on other grounds. CSI’s knowing, intentional, and written consent to the County’s limited administrative rights of access and inspection — set forth in the applications for the subject permits — also disarms CSI’s constitutional complaint.
3. Inspection Warrants
Next, CSI argues that the County must exercise its rights of access and inspection by obtaining administrative “inspection warrants” as defined in section 933.20, Florida Statutes (2011). The procedure for the issuance and enforcement of an inspection warrant follows, in sections 933.21 through 933.30. The trial court found that “Fla. Stat. 933.26 specifically limits the forcible entry onto private prop *340 erty for purposes of conducting a warrant-less inspection to times only where reasonable suspicion exists that a violation of a state or local law or code presents an immediate threat to public health or safety.”
In this case, however, no forcible entry was sought by the County. The consequence of CSI’s refusal to comply with its agreements in the permit applications is not a misdemeanor of the second degree (as would attend a refusal to permit an inspection authorized by warrant, section 933.27), but rather the prospect for revocation of CSI’s permit and the imposition of an administrative fíne and enforcement costs. In addition, section 933.29 specifies that the inspection warrant statutes are not to be construed “to. restrict the powers granted by general law to an agency of the state, or to a unit of local government acting on behalf of such agency pursuant to a contract with the agency,[9] to conduct inspections with or without warrant as authorized by general law.” The trial court and this Court are not addressing a motion to suppress evidence gathered in a criminal investigation, but rather an administrative permit holder’s alleged violations of certain conditions of the permit.
We thus conclude that the County’s exercise of the rights of access and inspection in furtherance of the permit conditions is not subject to a requirement to first obtain an inspection warrant under Chapter 933, Florida Statutes.
4. Estoppel
Before seeking and obtaining the temporary injunction, CSI moved to strike the County’s 2011 motion for further access and inspections at CSI’s property, and for sanctions against the County under section 57.105, Florida Statutes (2011). In those pleadings, CSI took the position that the 2005 settlement agreement had been fully performed, that the trial court should dismiss the lawsuit with prejudice, and that the County should bring its “new claims” “in the appropriate manner.” The County agreed with that assertion, acknowledging that the trial court lacked jurisdiction because the conditions in the settlement agreement had been performed. The County maintained that the 2011 notices of violation were administrative matters appropriate for resolution under the applicable ordinances rather than in the 1998 lawsuit.
 In response, CSI maintains that it was not judicially estopped from seeking a temporary injunction in the very lawsuit it claimed had been concluded and as to which no further reservation of jurisdiction remained.[10] We need not decide that question, however, because we agree with the parties that the undertakings in the 2005 settlement agreement were performed and that the circuit court lacked further jurisdiction to hear or determine CSI’s motion for temporary injunction in 2012. That court’s reservation of jurisdiction to enforce the settlement agreement— the case itself having been dismissed with prejudice in 2005- — ended when the parties fully performed. “When a trial court ap- *341 proves a settlement agreement by order and retains jurisdiction to enforce its terms, the trial court’s continuing jurisdiction to enforce the terms of the settlement agreement is circumscribed by the terms of the agreement.” Sarhan v. H & H Investors, Inc., 88 So.3d 219, 220 (Fla. 3d DCA 2011).
D. The Public Interest
The public interest in assuring that wetlands and a protected aquifer are protected from contaminants is self-evident. CSI’s argument, and the trial court’s finding, that “unannounced inspections and intrusions onto [CSI’s] property pose a great risk to their business and to the persons inspecting because of the heavy machinery and liability” are not based on an eviden-tiary record or competent, substantial evidence.
III. Conclusion
On this record, CSI was not entitled to a temporary injunction. CSI had and has an adequate administrative remedy, and the County has shown a substantial and compelling government interest in its regulatory scheme. CSI knew, in applying for and obtaining the zoning resolution and permits for its property and business operations, that DERM would request access and perform inspections to assure compliance. Absent abuse or harassment by DERM’s engineers and staff in the conduct of those inspections, CSI and Mr. Salonia might do better to welcome[11] the inspectors as a necessary feature of (a) casting concrete in an environmentally protected area atop the public’s water supply, and (b) complying with the conditions specified in CSI’s applications for its permits and land use resolution.
Reversed; temporary injunction of June 29, 2012, vacated.

. Shortly after oral argument, we issued an order vacating the order and injunction. Our analysis and reasons for doing so are detailed in this opinion.

. The settlement agreement included a payment of $140,000.00 by CSI and Mr. Salonia, jointly and severally, to pay for "any and all claimed damages, penalties, administrative costs, and attorney’s fees in this matter,” and it obligated them to comply with the pertinent Environmental Quality Control Board orders, the requisite permit terms, and the zoning resolutions. CSI and Mr. Salonia agreed to "legalize any and all uses of the property” within eighteen months and to pay the County a penalty in the amount of $500.00 per day for any failure to comply with any such obligations within the time periods specified in the agreement.

. By this time, DERM had been renamed "Permitting, Environment and Regulatory Affairs” (PERA). For the sake of the acronym-abused reader,, we refer consistently to the agency in this opinion as "DERM.”

. We would also vacate the temporary injunction for the failure to set a bond as required per Florida Rule of Civil Procedure 1.610(b). The finding that "the County will suffer no monetary harm from being enjoined” is contradicted by the record in the case. We dispense with a detailed review of that record because of our conclusion that CSI failed to *337 establish any of the elements required for the temporary injunction.

. The record contains no evidence that the County exceeded the scope of appropriate access and inspection relating to the issued permits-actions frequently and directly interfering with CSI’s business activities, or straying into other regulatory areas such as (for example) occupational safety, tax compliance, immigration, or disability act compliance.

. As examples, the National Environmental Policy Act of 1969 became effective in 1970. The Clean Water Acts of 1972 and 1977 substantially amended the Federal Water Pollution Control Act of 1948 to regulate water quality at all levels of government.

. See Bruce v. Beary, 498 F.3d 1232 (11th Cir.2007) (unannounced administrative inspection of an automobile body repair and salvage shop resembled a criminal raid).

. It also bears repeating that the access and inspections at issue here were only "sought,” not obtained through unauthorized entry or use of force. When denied access and inspections incident to the permits, the County issued administrative notices of violation and sought judicial enforcement of the inspectors’ rights.

. DERM acts for the County on behalf of the Florida Department of Environmental Protection, in conjunction with the South Florida Water Management District and the Florida Water Resources Monitoring Council, to protect area surface waters and groundwater. See, e.g., § 373.026(3), Fla. Stat. (2011).

. CSI also commenced a new circuit court lawsuit against the County in 2011, just days before it filed the motion for temporary injunction, directed to the permit terms and the 2010 administrative consent agreement with DERM.

. "Welcome,” in the same falsely enthusiastic spirit in which IRS auditors are welcomed to corporate offices with coffee and pastries, and bank regulators are encouraged to ask for anything they care to see.