# Third District Court of Appeal

## State of Florida

Opinion filed June 20, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-1381
Lower Tribunal No. 15-22197
_____

**ASA College, Inc., etc.,**
Appellant,

vs.

**Dezer Intracoastal Mall, LLC, etc.,**
Appellee.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, John Schlesinger, Judge.

Cole, Scott & Kissane, P.A., and Alexandra Valdes and Scott A. Cole, for appellant.

Coffey Burlington, P.L., and Susan E. Raffanello, for appellee.

Before EMAS, SCALES and LUCK, JJ.

EMAS, J.

ASA College, Inc. ("ASA") appeals the trial court's order denying ASA's motion for temporary injunctive relief and granting temporary injunctive relief to Dezer Intracoastal Mall, LLC ("Dezer"). For the reasons that follow, we reverse the denial of ASA's motion, but affirm the order, insofar as it grants Dezer's motion.

## BACKGROUND

The dispute between ASA and Dezer arose out of their respective ownership of two parcels located within the Intercoastal Mall in North Miami Beach (the "Mall Property"). In 2013, Dezer purchased what is hereinafter referred to as the "Center Parcel" and, thereafter, ASA purchased what is hereinafter referred to as the "Office Parcel." When ASA and Dezer purchased their respective parcels, each was subject to an easement—the Amended and Restated Shopping Center Operation and Reciprocal Easement Agreement ("REA")—executed in 1997 by the prior owners of the Center Parcel and the Office Parcel.

In 2014, ASA began operating a college on the Office Parcel, and, according to ASA, Dezer thereafter attempted to limit ASA's ability to utilize certain common-area parking areas of the Center Parcel, which it was entitled to use under the terms of the REA. Specifically, according to ASA, Dezer erected fences on the Center Parcel and advised ASA that it would place signage and implement a window sticker system which would limit ASA and its guests to parking only in a specified portion of the Center Parcel.

2

ASA sued, seeking, inter alia, temporary and permanent injunctive relief asserting that Dezer violated the REA by interfering with ASA's ability to use the Center Parcel common-area parking. Dezer counterclaimed for, inter alia, temporary and injunctive relief, asserting that, pursuant to the REA, ASA was prohibited from operating a college on the Office Parcel.

ASA's motion for temporary injunction requested the court to enjoin Dezer from "erecting large green fences on common parking areas which ASA has the right to use," and from "threatening to remove [ASA's] easement for common parking rights." Dezer's motion for temporary injunction asked the court to enjoin ASA from operating a "post-secondary educational facility, college, or any use other than office use."

Following an evidentiary hearing, the trial court denied ASA's motion for temporary injunction on the parking dispute and granted Dezer's motion, temporarily enjoining ASA from operating its college on the Office Parcel. ASA appeals, asserting that, as to the parking dispute, the trial court incorrectly construed the terms of the REA, resulting in an erroneous conclusion that ASA could not demonstrate a substantial likelihood of success on the merits. ASA also contends that the trial court abused its discretion in granting Dezer's motion for temporary injunction on the office use dispute. We address each issue in turn.

**THE PARKING DISPUTE**

Generally, a party seeking a temporary injunction "must establish that: (1) irreparable injury will result if the injunction is not granted, (2) there is no adequate remedy at law, (3) the party has a clear legal right to the requested relief,[1] and (4) the public interest will be served by the temporary injunction." Bay N Gulf, Inc. v. Anchor Seafood, Inc., 971 So. 2d 842, 843 (Fla. 3d DCA 2007). "A preliminary injunction is an extraordinary remedy which should be granted sparingly." Garcia v. Dumenigo, 46 So. 3d 1085, 1087 (Fla. 3d DCA 2010) (quoting City of Jacksonville v. Naegele Outdoor Adver. Co., 634 So. 2d 750, 752 (Fla. 1st DCA 1994)) (additional citation omitted).

In denying ASA's motion for temporary injunction on the parking dispute, the trial court determined that ASA had proven all of the requisite prongs for obtaining the injunction, with the exception of demonstrating a substantial likelihood of success on the merits. Specifically, the court determined that, although the REA contains general language providing ASA an easement to park in certain common-area parking areas in the Center Parcel, a more specific provision of the REA limits ASA to 100 parking spaces in the Office Parcel, and therefore, ASA could not demonstrate a substantial likelihood of success on the merits of its action.

---

[1] This prong is alternatively described as a substantial likelihood of prevailing on the merits. See Miami-Dade Cty. v. Concrete Structures, Inc., 114 So. 3d 333 (Fla. 3d DCA 2013).

Although we generally review such orders for an abuse of discretion, Anchor Seafood, 971 So. 2d at 843, to the extent the order is based on the trial court's interpretation of a contract, we apply a de novo standard of review. Telemundo Media, LLC v. Mintz, 194 So. 3d 434, 435 (Fla. 3d DCA 2016). See also Gainesville Woman Care, LLC v. State, 210 So. 3d 1243, 1258 (Fla. 2017) (holding: "The standard of review of trial court orders on requests for temporary injunctions is a hybrid. To the extent the trial court's order is based on factual findings, we will not reverse unless the trial court abused its discretion; however, any legal conclusions are subject to de novo review") (internal citation omitted).

Because the trial court's denial of ASA's motion was premised upon its construction of the terms of the REA, we apply the de novo standard of review. Applying this standard, we conclude that the trial court erred in its construction of the REA, and that, under a correct construction of the terms of the REA, ASA satisfied the "substantial likelihood of success on the merits" prong.

The relevant sections of the REA provide:

ARTICLE I
DEFINITIONS

As used in this REA, the following terms have the following meanings:

. . .

1.3. *Common Area*.

5

"Common Area" means **all areas within the boundary of the Center Parcel or Office Parcel that are, or are designated or intended to be, available for the non-exclusive use, convenience and benefit of all Occupants (as hereinafter defined) of the Office Parcel and Center Parcel and their respective Permittees** (as hereinafter defined).

Among other things, **Common Area includes** by way of illustration and not of limitation: (a) Access Roads; (b) **the Parking Area (as hereinafter defined)**; (c) sidewalks and walkways . . .

. . .

1.9. *Occupant*

"Occupant" or "Occupants" means any Person entitled by Lease to use and occupy any area within the Center or the Office Parcel.

. . .

1.11. *Parking Area. .*

**"Parking Area" means all areas in the Center or Office Parcel which are set apart or used from time to time for automobile and other vehicle traffic and parking**, including, without limitation, traffic lanes, aisles and roadways (including Access Roads) and curbs adjacent thereto; vehicle parking stalls at grade or in multi-level parking decks; pedestrian walkways, grade separations, including retaining walls; lighting standards; and traffic and directional signals and all amenities relating thereto.

1.12. *Party*.

A "Party" means Center Owner or Office Owner and "Parties" mean all of the foregoing, or any successor Person(s) acquiring the leasehold and/or fee interest, as the case may be, of a Party in or to any portion of such Party's Parcel.

6

1.13. *Permittees*

"Permittees" means all Occupants and their respective officers, directors, employees, agents, partners, contractors, customers, visitors, invitees, licensees and concessionaires.

. . .

ARTICLE II
EASEMENTS

2.1. *Definitions and Documentation.*

For purposes of this Article, the following will apply:

(a) All rights, privileges and easements granted herein for the benefit of a Party (the "Grantee") are nonexclusive and in common with the party granting such rights, privileges and/or easements (the "Grantor") and, unless provided otherwise, are irrevocable and for the benefit of each of the Parties hereto and their respective successors and assigns as owners of their respective Parcels.

. . .

2.2 *Easements for Use of Common Areas (Other than Common Utility Facilities and Access Roads).*

(a) **Center Owner hereby grants to Office Owner an easement in the Common Areas on the Center Parcel** (other than the Access Road portions thereof referred to in Section 2.3 and the Common Utility Facilities referred to in Section 2.4) for the benefit of the Office Parcel for:

(1) ingress to and egress from the Office Parcel; and
(2) circulation, passage **and parking of vehicles, subject to Section 6.2**; and
(3) circulation, passage and accommodation of pedestrians; provided, however, that such easements are limited to such portions of the Common Area of the Center Parcel as are set aside, required and authorized for such use.

7

(b) Office Owner, to the extent any portion of the Office Parcel constitutes roadway, pedestrianways or parking spaces, hereby grants to Center Owner an easement in the Common Areas on the Office Parcel for the benefit of the Center Parcel for:

(1)   ingress to and egress from the Center Parcel; and

(2)   circulation, passage and parking of vehicles; and

(3)   circulation, passage and accommodation of pedestrians; provided, however, that such easements are limited to such portions of the Common Area of the Office Parcel as are set aside, required and authorized for such use.

. . .

## ARTICLE VI
## PARKING REQUIREMENTS

6.1.  *Parking Spaces.*

Occupants of the Office Parcel and their Permittees shall have the right to use up to one hundred (100) non-designated parking spaces on the Office Parcel for parking automobiles, subject to those rules and regulations applicable to other users of parking spaces thereon.

6.2.  *Charges for Parking; Employee Parking Areas.*

No specific charge shall be made to or collected from any Occupants or Permittees on the Office Parcel for the right to park vehicles in the Parking Areas other than the payment by Office Owner of its share of the Common Area expenses.

Although section 6.1 establishes a limit of 100 parking spaces on the Office Parcel that may be used by Occupants of the Office Parcel (e.g., ASA) and their Permittees, there is no similar limitation on the easement granted in section 2.2(a) for parking by the Office Owner (i.e.,

8

ASA) in the common areas located within the Center Parcel. The only limitation on the easement established in section 2.2(a) is that it is "subject to section 6.2," which simply provides that the Occupants or Permittees on the Office Parcel shall not be charged for parking, other than what Office Owner (ASA) must pay as its share of common area expenses.

Thus, contrary to the trial court's interpretation that the "specific provision" of section 6.1 controls over the REA's "general contents," there is no conflict between sections 2.2(a) and 6.1, and thus no need to determine which provision "controls." Instead, the plain language contained within these two provisions can be read in harmony: under section 6.1, the Office Parcel's occupants and permittees (including ASA) have the right to use up to 100 spaces for parking on the Office Parcel, and, additionally under section 2.2(a), the Office Owner (ASA) has an easement to use the common-area parking areas of the Center Parcel, which is not limited in any manner by section 6.2. See City of Homestead v. Johnson, 760 So. 2d 80, 84 (Fla. 2000) (acknowledging "the rule of construction requiring courts to read provisions of a contract harmoniously in order to give effect to all portions thereof").

Accordingly, because we conclude that the trial court erred in its interpretation of the plain language of the REA, resulting in an erroneous determination that ASA failed to establish a substantial likelihood on the merits (while finding ASA satisfied the

9

remaining prongs needed for a temporary injunction), we reverse the court's denial of ASA's motion for a temporary injunction and remand for entry of a temporary injunction in favor of ASA. See St. Johns Inv. Mgmt. Co. v. Albaneze, 22 So. 3d 728 (Fla. 1st DCA 2009) (reversing denial of motion for temporary injunction where trial court's construction of contract conflicted with its plain meaning and thus, holding it was error for the trial court to find that appellant failed to demonstrate a substantial likelihood of success on the merits).

**THE OFFICE USE DISPUTE**

In temporarily enjoining ASA's operation of a college on the Office Parcel, the trial court determined that Dezer had established the requisite elements for obtaining such relief, to wit: irreparable injury, no adequate remedy at law, a substantial likelihood of success on the merits and that the injunction will serve the public interest.

Article VII of the REA provides in pertinent part:

ARTICLE VII
GENERAL COVENANTS

. . .

7.2. *Limitation on Detrimental Characteristics*
No use, operation or occupancy will be made, conducted or permitted on any part of the Office Parcel which use or operation is obviously detrimental to the operation of the Center in the reasonable judgment of Center Owner. **Included among the uses or operations which are prohibited** because of their obvious detriment to retail stores, merchandise or services usually found in a retail center, as well as their obvious detrimental effect upon the general appearance of the

10

Center are uses or operations which produce or are accompanied by characteristics such as, but not limited to, the following:

> (a) Any noise, litter, odor or other activity which may constitute a public or private nuisance;
> (b) Any physically damaging or dangerous hazards;
> (c) Any dumping, disposal, incineration or reduction of garbage or refuse; or
> **(d) Any use of the Office Parcel for other than office use.**

We find no abuse of discretion in the trial court's decision to temporarily enjoin ASA from operating a college on the Office Parcel, pending a final decision on the merits. Although ASA is correct that the purpose of a temporary injunction, generally, is to preserve the status quo, Garcia v. Dumenigo, 46 So. 3d 1085, 1087 (Fla. 3d DCA 2010), this is only so where a failure to maintain the status quo will result in irreparable injury. Wexler v. Lepore, 878 So. 2d 1276 (Fla. 4th DCA 2004). And this court has previously held that where a restrictive covenant is involved, the party seeking to enforce the covenant need not establish irreparable injury. Jack Eckerd Corp. v. 17070 Collins Ave. Shopping Ctr., Ltd., 563 So. 2d 103, 105 (Fla. 3d DCA 1990). In addition, "a mandatory injunction is the proper means of enforcing a restrictive agreement affecting real estate." Fox v. Madsen, 12 So. 3d 1261, 1263-64 (Fla. 4th DCA 2009). Accordingly, we affirm the trial court's order granting Dezer's motion for temporary injunctive relief.[2]

Affirmed in part, reversed in part, and remanded with directions and for further proceedings consistent with this opinion.

---

[2] We find no merit in ASA's additional arguments on appeal.

11